ANNE W. YATES, administratrix, *vs.* NORTON COMPANY.

Suffolk. February 2, 1988. — July 20, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Negligence,* Manufacturer, Air respirator mask, Adequacy of warning, Foreseeability of harm. *Warranty. Sale,* Warranty. *Uniform Commercial Code,* Warranty. *Practice, Civil,* Instructions to jury.

At the trial of a claim for breach of warranty arising out of the death in an industrial accident of a worker who inhaled certain toxic chemicals while wearing an air respirator mask manufactured by the defendant, the judge's instructions to the jury were deficient in failing to inform the jury that a product manufacturer's failure to give adequate warnings constitutes breach of an implied warranty of merchantability, and neither the fact that the case was tried solely on the issue of the adequacy of warnings nor the judge's two brief allusions to warnings during the breach of warranty instructions converted his incomplete comments into a "full, fair and clear" statement of the law. [74-76]

At the trial of a claim for negligence arising out of the death in an industrial accident of a worker who inhaled certain toxic chemicals while wearing an air respirator mask manufactured by the defendant, where the worker's particular use of the respirator raised only the issue of his comparative negligence, the judge improperly instructed the jury that a finding of an unforeseeable misuse of the respirator by the worker would, by itself, warrant a finding in favor of the defendant. [76-77] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on July 18, 1980.

The case was tried before *Herbert Abrams,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert V. Costello* for the plaintiff.

*John R. Bologna* for the defendant.

LIACOS, J. The plaintiff, Anne W. Yates, administratrix of the estate of Jonathan Smith, brought this wrongful death

action against Norton Company (Norton) and Sterling-Clark-Lurton Corporation (Sterling-Clark-Lurton).[1] The plaintiff alleged that Smith died as a result of an industrial accident occurring during the course of his employment with California Products Corporation (California Products). Specifically, the plaintiff claimed that Smith died as a result of inhaling certain toxic chemicals manufactured by Sterling-Clark-Lurton, and that Smith had been wearing an air respirator mask manufactured by Norton. The case against Norton was for breach of warranty and for negligence. On the warranty count, the case against Norton was tried strictly as a failure to provide adequate warnings as to the use of its product. A Suffolk Superior Court jury returned a verdict for Norton on both the warranty and the negligence counts. The plaintiff appealed. We transferred the appeal from the Appeals Court on our own motion. For the reasons stated below, we reverse and remand the case for a new trial.

The facts are as follows: Jonathan Smith was an unskilled laborer whose job with California Products was to clean out tanks that were used to mix paints and varnish. In July, 1980, he was asked to clean the interior of a 500-gallon tank that had been used to make varnish. The tank was approximately five feet tall and six feet in diameter. Smith's foreman told him to coat the interior wall of the tank with "5f5," a paint and varnish remover manufactured by Sterling-Clark-Lurton, then to cover the tank, and to allow the paint remover to work over the weekend. The foreman told Smith that the tank would be "power washed" from the outside during the following week and admonished Smith not to go into the tank to scrape the varnish residue because the power wash would do the job.

The following Monday Smith applied a second coat of "5f5" because the first application had not worked adequately. Smith's foreman told Smith to let the solvent work for a few more days and again warned Smith not to go inside the tank. On Tuesday Smith went into the tank to scrape the varnish

---

[1] Sterling-Clark-Lurton entered into a settlement with the plaintiff at the close of the evidence and is not a party to this appeal.

residue from the interior walls. At approximately 10 A.M., one of Smith's coworkers, who had also told Smith not to go inside the tank, tapped on the tank to notify Smith that it was time for a coffee break. Smith took the morning coffee break, as well as a break for lunch. There was evidence that he consumed several cans of beer during the work day. Smith reentered the tank at approximately 2:05 P.M. following the afternoon coffee break.

At approximately 2:35 P.M., Smith's foreman inquired as to Smith's whereabouts. When told that Smith was cleaning the tank, the foreman went to look for Smith. He found Smith lying unconscious on the bottom of the tank, wearing an organic vapor respirator manufactured by Norton. Smith was pulled out of the tank and was taken to a hospital. He never regained consciousness, and died three days later.

The results of the autopsy showed that Smith had suffered acute bronchopneumonia and brain death as a result of the inhalation of methylene chloride, a component of "5f5."

The Norton respirator which Smith had been wearing was advertised as being effective against organic vapors. Such respirators do not supply oxygen, but, when the wearer inhales, the air is drawn into a cartridge where activated charcoal attaches to the harmful organic vapors entrapping the vapors in a filter and preventing them from reaching the lungs. The cartridges have a limited useful life, and, once the activated charcoal is saturated, contaminants are able to "break through" the filter and enter a person's lungs.

The Norton respirator and cartridges were approved by the National Institute for Occupational Safety and Health (NIOSH). The respirator and cartridges were intended to be used in a well-ventilated area and with chemicals that had good warning qualities.[2] As originally sold, the respirator came in an individual package together with an instruction booklet. The in-

---

[2] Methylene chloride has poor warning qualities. Poor warning qualities, as applied to organic vapors, mean that a vapor lacks a distinctive taste or smell to warn a person that he or she is breathing the vapor itself.

struction booklet contained a warning;[3] a yellow tag was attached to the respirator which also provided a warning;[4] the package in which the cartridges were sold furnished a warning;[5] and, finally, the cartridges themselves contained a warning.[6]

---

[3] The information booklet warning read as follows:

"CAUTION: This respirator must not be used in atmospheres immediately dangerous to life, or those that contain carbon monoxide.

"WARNING: These respirators do not supply oxygen. They must be used in adequately ventilated areas containing oxygen at a partial pressure not less than 148.2mm mercury (19.5% by volume oxygen at sea level). Do not use in atmospheres where concentration of contaminants is immediately dangerous to life or health. Do not use chemical cartridge respirators against gases or vapors which do not have adequate warning properties or against those which generate high heats of reaction with the sorbent material in the cartridge."

There was no evidence that the decedent had seen this warning.

[4] The yellow tag warning read as follows:

"WARNING. 1. This device does not supply oxygen.

"2. Use only in adequately ventilated areas containing oxygen at a partial pressure not less than 148.2 mm mercury (19.5% by volume oxygen at sea level).

"3. Do not use where concentrations of contaminants are immediately dangerous to life.

"4. Leave area immediately if:

"A. Breathing becomes difficult

"B. Dizziness or other distress occurs

"C. You taste or smell contaminant.

"5. Use strictly in accordance with instructions, labels, and limitations pertaining to this device.

"6. Never alter or modify this device."

There was evidence that this tag was not on the respirator that the decedent was using.

[5] The package contained the following warning:

"LIMITATIONS. Approved for respiratory protection against not more than 1,000 parts per million organic vapors by volume. Not for use in atmospheres containing less than 19.5 percent oxygen. Do not wear for protection against organic vapors with poor warning properties or those which generate high heats of reaction with sorbent material in the cartridge. Maximum use concentrations will be lower than 1,000 parts per million organic vapors where that concentration produces atmospheres immediately dangerous to life or health."

There was no evidence the decedent had knowledge of this warning on the package.

[6] This warning provided:

"CAUTION: Not for use in atmospheres containing less than 19.5% oxygen by volume at sea level. Permissible chemical cartridge for

An Occupational Safety and Health Administration (OSHA) representative investigated California Products directly after Smith's accident. Among other things, the OSHA investigation found that the level of oxygen in the lower portion of the tank was approximately 14% to 17%, that the level of methylene chloride exceeded the maximum allowable limit by more than fourteen times, and that California Products had no formal training program for employees with respect to the hazards of chemicals or with respect to the proper selection and use of respirators. Smith used the same respirator throughout his employment at California Products. California Products did not instruct its employees about the replacement of cartridges, and there was some evidence that employees had difficulty in obtaining replacement cartridges.

The only issues the plaintiff raises on appeal deal with the judge's instructions to the jury. The plaintiff's first claim is that the judge erred in failing to instruct the jury that the failure of a product manufacturer to provide adequate warnings constitutes a breach of the implied warranty of merchantability.[7]

It is well established in the Commonwealth that a failure by a manufacturer or vendor to give an adequate warning constitutes a breach of the implied warranty of merchantability. *Hayes* v. *Ariens Co.,* 391 Mass. 407, 413-414 (1984). *Casagrande* v. *F.W. Woolworth Co.,* 340 Mass. 552, 555 (1960). The parties do not dispute this principle of law. Rather, the plaintiff claims that the judge never adequately instructed the jury that the above principle is the law in the Commonwealth. The defendant counters that the judge implicitly accepted the principle because he proceeded to instruct on breach of implied warranty in light of the fact that the case was tried solely on the issue of adequate warnings.[8]

---

organic vapors. Refer to manufacturer's instructions for directions on assembly, selection, use, and maintenance."

There was evidence that this warning was obscured by paint and sludge.

[7] The plaintiff adequately preserved her rights by requesting a proper instruction and by noting her objections at the conclusion of the charge. See Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

[8] After instructing on negligence, the judge turned to breach of warranty

"The primary purpose of instructions to a jury is to assist them in the discharge of their responsibility for finding the facts in issue and then in applying to the facts found the applicable rules of law to enable them to render a proper verdict. The instructions should be full, fair and clear as to the issues to be decided by the jury, the rules to be followed by the jury

and instructed:

"It is also alleged that the defendant breached the implied warranty of merchantability in that its product was not fit for the use for which it was intended and that as a direct and proximate result of the defendant's negligence in failing to provide adequate warnings in its breach of the implied warranty of merchantability, Mr. Smith died . . . .

"The defendant, Norton Company, denies these allegations and specifically claims that their warnings were adequate and that the sole proximate cause of Jonathan Smith's death was the negligence of his employer, either standing alone or combined with the negligence of Jonathan Smith and also that they did not breach the implied warranty of merchantability in that the air purifying respirator manufactured by them was fit for the ordinary purpose for which goods were intended and that their warnings were otherwise adequate."

Later, the judge instructed:

"An implied warranty means that the product is fit for the ordinary purposes for which such product was intended. Here, the Norton Air Respirator, Model 7500 Series, manufactured by the defendant and sold to California Products Company, carried with it an implied warranty that it was of merchantable quality; in other words, that the Norton Air Respirator, Model 7500 Series, was reasonably safe taking into consideration the normal and average uses to which it was going to be used and the risks which are normally attendant upon the use of a product by the people who come in contact with it.

"If a product is defective to such an extent as to be unfit for the purpose for which it was intended, then it is not merchantable and the implied warranty of merchantability is breached.

". . . .

"Warranty liability is not absolute liability. And the law does not require or expect any manufacturer to make its product accident free. The implied warranty of merchantability is primarily directed at the operative essentials of a product. It is not intended to guarantee high quality or perfection of detail. There is no implied warranty that the goods shall be of the best or even of very high quality.

"In order for the plaintiff to prevail on her claim against the Norton Company for alleged breach of an implied warranty of merchantability, she must prove that the Norton Air Respirator, Model 7500 Series, was not reasonably suitable for the ordinary uses for which goods of that kind and description are sold and that such defect or breach existed at the time of the sale proximately caused Mr. Smith's death."

in deciding the facts, and the law they are to apply to the facts found. Instructions are not addressed to the lawyers in the case but to the jurors who are persons of varying degrees of education and experience, drawn at random from the community and from all walks of life, but who are not trained in the field of law. The language used in instructing the jury must be appropriately chosen to be helpful to such a group." *Pfeiffer* v. *Salas,* 360 Mass. 93, 100-101 (1971).

The instructions given on the issue of breach of warranty were deficient in failing to impart to the jury the notion that a failure to give adequate warnings constitutes breach of an implied warranty of merchantability. Neither the fact that the case was tried solely on the issue of the adequacy of warnings nor the judge's two brief allusions to warnings during the breach of warranty instructions converts these incomplete comments to a "full, fair and clear" statement of the law. *Id.* at 100. Without a clear understanding of the law with regard to breach of implied warranties, the jury would not be able to arrive at a correct decision..

On the negligence claim, the plaintiff contends that the instruction on misuse was erroneous. The judge instructed first on the elements of negligence. As to the defendant's duty to exercise reasonable care, he properly stated in part: "Under our law in Massachusetts, the manufacturer of a product which the manufacturer knows or should know is dangerous or is in a dangerous condition or is likely to become dangerous owes a duty to exercise reasonable care to prevent injury to those persons who the manufacturer ought to foresee will come in contact with that product. The duty to exercise reasonable care on the part of the manufacturer includes a duty to warn of danger if the person on whom that duty rests has some reason to suppose a warning is needed. And the failure to fulfill that duty to use reasonable care is negligence."

The judge then went on to instruct the jury that: "A manufacturer is not liable for the consequences of the unforeseeable misuse of its product. If you find that Jonathan Smith used the Norton Air Respirator, Series 7500 in an improper or abnormal manner which was not reasonably foreseeable to the Norton

Company, *in that event you would be warranted in finding in favor of the Norton Company"* (emphasis supplied).[9]

If the issue of unforeseeable misuse was not raised by the evidence, this charge should not have been given. If, contrary to the plaintiff's contentions, that issue was raised by the evidence, this aspect of the charge on negligence was erroneous, misleading, and confusing. "Applying the unreasonable use doctrine to actions sounding in negligence is foreclosed by the Commonwealth's comparative negligence statute [G. L. c. 231, § 85 (1986 ed.)]." *Colter* v. *Barber-Greene Co., ante* 50, 63 (1988). See *Allen* v. *Chance Mfg. Co.,* 398 Mass. 32, 34 n.1 (1986); *Back* v. *Wickes Corp.,* 375 Mass. 633, 640 (1978). Thus, while this instruction correctly states the law as to a products liability claim, it was inappropriate on the negligence count. On the negligence count, the deceased's use of the respirator in the tank, at best, raised only the issue of the comparative negligence of the deceased. The judge's instruction injected confusion into the jury's deliberations on the negligence count by improperly instructing them that a finding of an unforeseeable, improper, or abormal use of the respirator by the deceased would, by itself, warrant a "finding in favor of the [defendant]." See *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.,* 365 Mass. 122, 126 (1974). Thus, we remand this case for a new trial on both the breach of warranty and negligence claims.

*Judgment reversed.*

O'CONNOR, J. (dissenting in part). I agree that the jury instructions on the breach of warranty claim were deficient, and that a new trial of that claim is necessary. I do not agree, however, that the instructions on the negligence claim were deficient. Retrial of the negligence claim is inappropriate.

It is true, of course, that, if a manufacturer has negligently placed its product into a stream of commerce, a plaintiff's unreasonable use of that product does not necessarily bar his

---

[9] The plaintiff objected to the misuse charge.

recovery for negligence. The parties' negligent contribution to the injury must be compared. *Colter* v. *Barber-Greene Co., ante* 50, 63-64 (1988). The judge did not instruct the jury otherwise. Specifically, he did not instruct the jury otherwise when he told them that a "manufacturer is not liable for the consequences of the *unforeseeable* misuse of its product" (*ante* at 76, emphasis added), and that the jury may find for the manufacturer if they find that the deceased used the product in a manner which the manufacturer reasonably could not have foreseen.

It is clear from the instructions' context that, when the judge made the statements the court holds to be erroneous, his focus was on the standard by which the jury were to measure the manufacturer's conduct. That instruction was necessary in light of the evidence recited in the court's opinion concerning the manner in which the deceased used the product. The instruction was correct. The only deficiency, of which the plaintiff cannot complain, was that the judge should have told the jury that if the deceased's use of the product was not foreseeable by the manufacturer, the jury *must* find for the manufacturer. Foreseeability of use, and therefore of risk, are critical components of unreasonableness in production. They are essential to products liability whether based on negligence or breach of warranty. The court's contrary statement,[1] *ante* at 77, reveals a serious misunderstanding of products liability law. Just as a manufacturer is not liable for the consequences of an unforeseeable use (or misuse) of its product on a breach of warranty theory, *Allen* v. *Chance Mfg. Co.,* 398 Mass. 32, 34 (1986), a manufacturer is not liable for the consequences of an unforeseeable use (or misuse) of its product on a negligence theory. As the court said in *Hayes* v. *Ariens Co.,* 391 Mass. 407, 410 (1984), "[a] defendant cannot be found to have been negligent without having breached the warranty of merchantability." Contrary to the court's assertion, *ante* at 77, the deceased's use of the product did not "at best, raise[] only the issue of the comparative negligence of the deceased."

---

[1] "Thus, while this instruction correctly states the law as to a products liability claim, it was inappropriate on the negligence count."