Antonio Marques & others[1] vs. Bellofram Corporation & another.[2]

No. 88-P-1072.

Middlesex. November 15, 1989. - February 16, 1990.

Present: Brown, Kaplan, & Kass, JJ.

*Negligence*, Die casting machine, Duty to warn, Proximate cause, Causing loss of consortium, Causing loss of companionship and society. *Evidence*, Videotape. *Warranty*. *Husband and Wife*, Consortium. *Parent and Child*, Companionship and society. *Workmen's Compensation Act*, Action by spouse or child. *Employer's Liability*, Fellow employee.

At the trial of a civil action the instructions given to the jury with respect to negligence, the defendant's duty of care, and intervening cause were adequate and proper. [279-280]

At the trial of a negligence case there was no error in the judge's admission in evidence of a videotape as a visual aid to illustrate a defendant's contentions or theories. [280-281]

In a civil case there was no basis for a claim of breach of warranty of merchantability and that count was properly dismissed. [281-282]

In a negligence action arising before the effective date of G. L. c. 152, § 24, as appearing in St. 1985, c. 572, § 35, in which an employee's dependents sought damages against his employer for losses of spousal and parental consortium, the employer could not raise the "fellow servant" defense, as the relation of the employees involved was irrelevant to the consortium claims. [282-284]

Discussion with respect to the viability of the "fellow servant" defense in certain negligence actions, in light of G. L. c. 152, § 66, and G. L. c. 153, § 1. [284-285]

CIVIL ACTION commenced in the Superior Court Department on August 19, 1982.

The case was tried before *John P. Forte*, J., sitting under statutory authority.

[1]Fatima, wife, and Lasallette and Helga, daughters, of Antonio Marques.

[2]Cambridge Tool & Mfg. Co., Inc.

*Andre A. Sansoucy* (*John W. Brister* with him) for the plaintiffs.

*James C. Gahan, Jr.* (*John T. Underhill* with him) for Cambridge Tool & Mfg. Co., Inc.

*Carmin C. Reiss* for Bellofram Corporation.

KAPLAN, J. Bellofram Corporation (Bellofram) assembles and sells "air regulators," instruments which regulate air pressure. Sometime before 1973, Bellofram acquired from an outside source a number of dies which it provided in that year to Cambridge Tool & Mfg. Co., Inc. (Cambridge), a die casting company. The dies were to be used by Cambridge in its die casting machine for the fabrication of parts needed by Bellofram. Cambridge modified the dies in some particulars and used them to produce parts for Bellofram in the period from 1973 to the date of the accident which gave rise to the instant litigation.

On May 1, 1980, the plaintiff Antonio Marques, a supervising employee of Cambridge, and Barbara Hardy, another Cambridge employee, were trying to bring the recently repaired "cover" half of one of the dies into the die casting machine and into position with respect to the "ejector" half. An eyebolt, threaded into the cover, connected the cover to a chain hoist. Marques evidently was cradling the underside of the cover with his right hand while it was being lowered. Unfortunately the cover fell. Marques suffered severe injuries to his hand; he lost parts of four fingers.

Marques sued Bellofram for his injuries on grounds of negligence, breach of warranty, and strict liability.[3] Joining him as plaintiffs against Bellofram were his wife and two daughters claiming damages for losses of spousal and parental consortium. The wife and daughters brought in Cambridge as a defendant and, charging Cambridge with negligence, claimed damages for the losses of consortium.

A judge of the Superior Court at first allowed Bellofram's motion for summary judgment dismissing the action against it, but on reconsideration he permitted the negligence ground

---

[3]The strict liability theory was abandoned.

to stand. Thus trial proceeded on negligence theories against Bellofram and Cambridge.

The jury returned special verdicts finding that Bellofram was not negligent; that Marques and Hardy were negligent, and that their negligence was the proximate cause of the injuries to Marques and correspondingly of the consortium injuries; and that Cambridge was not otherwise negligent. The consortium plaintiffs were awarded damages of $66,000 — $41,000 for the wife and $12,500 for each of the daughters — against Cambridge, Cambridge being held for negligence on a basis of respondeat superior. Postverdict motions were denied.

Marques and the consortium plaintiffs appeal from the judgment in Bellofram's favor, while Cambridge appeals from the judgment against itself.

1. *Appeal by plaintiffs of the judgment freeing Bellofram.* We deal briefly with the plaintiffs' contentions that the judge did not instruct properly on the negligence theories[4] and on intervening cause; that a certain videotape prepared on behalf of Bellofram should not have been admitted in evidence; and that the warranty claim should not have been dismissed.

(a) The plaintiffs were urging theories of "negligent supply" of the die and "negligent failure to warn." The judge's instructions were rather homespun and relied more than we like on interstitial improvisation, but we think they were adequate to convey to the jury the meaning of negligence generally; of negligence in the makeup of an article which creates an undue risk of injury in its use (here a question of the proper location of a hole or holes on the surface of the cover for threading one or a couple of bolts), see *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 378 (1980); *McIsaac* v. *Didriksen Fishing Corp.*, 809 F.2d 129, 132-133 (1st Cir. 1987), and (as a separate category) of negligence in a failure to warn of such a risk, see *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 879-881 (1978).

---

[4]Bellofram contends that the plaintiffs did not make clear their objections and so forfeited them. We deal with the objections on their merits.

The judge also properly charged, in effect, that when considering the extent and nature of Bellofram's duty of care, the jury should take into account the knowledge and proficiency in die casting matters that Bellofram, the supplier, had or could be expected to have, in comparison with the skills of Cambridge, the user (here any duty of Bellofram to advise or warn Cambridge might be lessened if, as Bellofram contended, Cambridge's experience and expertness far exceeded Bellofram's). See *Slate* v. *Bethlehem Steel Corp.*, 22 Mass. App. Ct. 641, 646 (1986). Cf. *Barbosa* v. *Hooper Feeds, Inc.*, 404 Mass. 610, 614-615 (1989); *Laaperi* v. *Sears, Roebuck & Co.*, 787 F.2d 726, 729-732 (1st Cir. 1986). The case of *Yates* v. *Norton Co.*, 403 Mass. 70 (1988), is not to the contrary.

(b) No objection was preserved to the judge's final charge on intervening cause. Although the charge (as modified after the plaintiffs' criticism of it) could have been improved upon, it did indicate that, if negligence on the part of Bellofram contributed substantially to the casualty, Bellofram could be held liable despite the negligence of a later actor which also contributed. Cf. *Jesionek* v. *Massachusetts Port Authy.*, 376 Mass. 101, 106 (1978); *Glicklich* v. *Spievack*, 16 Mass. App. Ct. 488, 497 (1983).

(c) There was admitted in evidence on the part of Bellofram a videotape evidently intended not to depict the sequence of actions culminating in the accident but to make graphic one or more of Bellofram's contentions or theories. The videotape, introduced with explanations by a Bellofram expert, tended to show that the die could not have been installed through the side of the machine with the aid of a steel plate, as Marques testified he had done, but must have been installed from the top. We surmise that the videotape would tend to show, more generally, that the accident resulted from human error in threading the eyebolt securely into the cover, rather than from Bellofram's supposed negligence in the makeup of the die, or in failure to warn, etc.[5] It lay well

---

[5]The judge took briefs and held a voir dire on the question of admitting the videotape. At first the judge thought of admitting it with an instruction

within the judge's discretion to admit the videotape for the purpose or purposes mentioned. See *Commonwealth* v. *Mulica*, 401 Mass. 812, 820-821 (1988); *Szeliga* v. *General Motors Corp.*, 728 F.2d 566, 567-568 (1st Cir. 1984).

As far as we can make out from the present record, Bellofram's answers were fairly responsive in substance to the interrogatories put to it relating to expert opinion. The plaintiffs objected, however, to Bellofram's omission to divulge ahead of trial that it intended to offer the videotape. Without considering just how far interrogatories could properly go in calling for the particular means by which a party proposed to make its proof or oppose the opponent's proof, compare *Levins* v. *Theopold*, 326 Mass. 511 (1950); *Cassano* v. *Gogos*, 20 Mass. App. Ct. 348, 355 (1985), we note that the plaintiffs' interrogatories were not in fact so framed as to elicit what videotapes or other visual aids Bellofram was going to offer. Compare *Giannaros* v. *M.S. Walker, Inc.*, 16 Mass. App. Ct. 902 (1983); *Hewlett-Packard Co.* v. *Bausch & Lomb, Inc.*, 116 F.R.D. 533, 536 (N.D. Col. 1987). We add that as the trial unfolded the plaintiffs appear to have had adequate time to analyze and respond to the videotape — they did not seek any continuance — and on their part they introduced a large model of the die casting machine and die cover without preliminary warning that they were going to do so. There was no error.

(d) There was no basis for a claim of breach of the warranty of merchantability.[6] A warranty might possibly have attached if Bellofram could be fairly understood to have leased the die to Cambridge, but that would be a distortion of the transaction; it was better understood as amounting to a bailment or something on that order: Bellofram retained ownership of the die and lent it to Cambridge for the purpose of enabling Cambridge to produce the air regulator parts. Whatever the exact characterization of the relationship, it

that it went only to impeaching Marques, but, as plaintiffs' counsel preferred not to have the jury so instructed, the judge admitted it without limitation.

[6] A claim of warranty of fitness was abandoned.

was not such as to implicate a warranty. See G. L. c. 106, §§ 2-314, 2-318, and *Mason* v. *General Motors Corp.*, 397 Mass. 183, 189 (1986).

2. *Appeal by Cambridge of the judgment against it.* As noted, the consortium plaintiffs succeeded against Cambridge on the basis of the company's liability for negligence of its employee in the course of the employment. The judge in effect overruled Cambridge's contention that it was free of liability by reason of a "fellow servant" defense.[7]

(a) We shall first assume that this defense is not extinct and can possibly survive in some sort as part of the law of the Commonwealth — a matter to which we return below. Still it would not apply in the present case.

Marques was entitled to, and received, workers' compensation as against Cambridge. Under the doctrine of *Ferriter* v. *Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 509, 516, 530 (1980), the fact of Marques' right to, and recovery of, this compensation did not exclude a consortium claim by Marques' near relatives against the employer. By failing at the time of his employment to elect to preserve his common law rights against the employer, a worker forgoes those rights and remits himself to workers' compensation. G. L. c. 152, § 24. That election, however, does not extinguish the common law rights of third persons — here (as in *Ferriter*) the wife and children. In this sense a consortium claim by the relatives against the employer is "independent" of any claim by the injured worker against the employer, as *Ferriter* and other decisions have emphasized. See 381 Mass. at 520-529; *Feltch* v. *General Rental Co.*, 383 Mass. 603, 606-608 (1981); *Olsen* v. *Bell Tel. Labs.*, 388 Mass. 171, 176-177 (1983). Cf. *Pinheiro* v. *Medical Malpractice Joint Underwriting Assn.*, 406 Mass. 288, 291-293 (1989); *Bilodeau* v. *Lumbermen's Mut. Cas. Co.*, 392 Mass. 537, 539, 543-544 (1984).

---

[7]Cambridge raised the issue by requests for instructions and motions for a directed verdict and judgment n.o.v. The judge did not charge the jury on the matter but reserved it for decision by himself in the light of the jury's findings in their special verdicts.

Thus defenses that might be available to a defendant in an action by the person physically injured may not be and generally are not available to that defendant in the consortium action by the person's relatives. In *Feltch* v. *General Rental Co.*, 383 Mass. at 609-610, the recovery on the consortium claim was full, and not to be reduced by reason of the fact that — in a regime of comparative negligence — the person physically injured was thirty-seven percent negligent; and in *Morgan* v. *Lalumiere*, 22 Mass. App. Ct. 262, 271-272 (1986), the consortium recovery was full, although that person's negligence exceeded fifty percent.[8]

There would be peculiar irony in allowing a "fellow servant" defense in the consortium action. A workers' compensation scheme eliminates that defense as against the worker; by what anomaly could it be revived and raised against consortium plaintiffs who are not employees of the defendant Cambridge or fellow employees of any employee of Cambridge?

It is a fact that, with workers' compensation in force, Marques could not maintain an action against Hardy for her negligence, nor could Hardy for Marques' negligence. This, however, is not referable to a persistence of a fellow servant defense, which when it is recognized protects the employer, not any worker; rather it results from an interpretation of the workers' compensation statute considered consistent with its general scheme. See *Saharceski* v. *Marcure*, 373 Mass. 304, 307 & n. 1 & 3 (1977); *Mendes* v. *Tin Kee Ng*, 400 Mass. 131, 134 (1987); *Frassa* v. *Caulfield*, 22 Mass. App. Ct. 105, 108-110 (1986). At all events the relation inter se of the employees Marques and Hardy is without bearing

---

[8]In *Corrigan* v. *General Electric Co.*, 406 Mass. 478 (1990) (4-2 decision), a majority of the court ruled that the "independence" of the consortium claim need not be absolute across the board. Where workers' compensation was denied because the Industrial Accident Board "found that the husband had not sustained the claimed injury", a consortium claim against the employer was held barred as a matter of former adjudication. *Id.* at 479, 480-481. This special indulgence to litigative efficiency is irrelevant to the present case where the accident was in the course of employment and compensation was paid.

upon the consortium claim. Cambridge points to a case decided many years ago, *Slavinsky* v. *National Bottling Torah Co.*, 267 Mass. 319, 322 (1929), which indicated that, with compensation in force, a parent was barred in an action against the employer for loss of her child's services due to injury by negligence of a fellow employee in the course of the employment. That appeared referable to a fellow servant defense, but the opinion did not supply any reasoned explanation for invoking the defense; the explanation may lie in a venerable conception of a parent's claim for loss of the child's services as being merely "consequential" to a claim for the physical injuries. See *Zarba* v. *Lane*, 322 Mass. 132, 135 (1947). Cf. *Barboza* v. *Decas*, 311 Mass. 10, 13-14 (1942). That would not be a fair characterization of the modern consortium claim.

(b) We revert to the question which need not necessarily be decided for purposes of the present case: whether a fellow servant defense is still alive in any respect or context in Massachusetts? In *Ferriter*, the question was reserved whether the fellow servant rule was still "vital" in the Commonwealth. 381 Mass. at 530 n.30. We think not. At most it is greatly reduced by inanition. It is eliminated as between employee and employer where workers' compensation applies, as we have seen, as well as where the employer violates a duty to subscribe to workers' compensation, see G. L. c. 152, § 66. And where the employer is not within the scope of workers' compensation, the Employers Liability Act, G. L. c. 153, § 1, largely eliminates the defense in suits by employees. Add to all this the general decline of the defense because of its iniquities, which have been deplored for a century or more. It may be found, when occasion arises, to be extinct in the Commonwealth, like the flightless bird called the dodo, see 4 Harper, James & Gray, Law of Torts § 21.2, at 219 (2d ed. 1986), as the New York Court of Appeals found some years ago to be the case in that jurisdiction. See *Buckley* v. *City of New York*, 56 N.Y. 2d 300 (1982).

To return to the particular milieu of the present case, we add that our ruling herein is of limited practical effect because the *Ferriter* principle allowing consortium actions as above described has been abolished by statute after December 10, 1985. See G. L. c. 152, § 24. But as to antecedent situations the principle holds, together with its logical consequences, which is to say the consequences of the policies that are implicit in the principle.

*Judgments affirmed.*