244 P.3d 978 (2010)
Leo MACIAS and Patricia Macias, husband and wife, Respondents,
v.
MINE SAFETY APPLIANCES CO. et al., Appellants.
No. 39171-6-II.
Court of Appeals of Washington, Division 2.
December 14, 2010.
*979 Benjamin Robert Couture, David S. Frockt, Matthew Phineas Bergman, Bergman & Frockt PLLC, John Wentworth Phillips, John Matthew Geyman, Phillips Law Group PLLC, Seattle, WA, for Respondents.
Paul Joseph Kundtz, Wendy E. Lyon, Riddell Williams PS, Seattle, WA, Timothy Lee Ashcraft, Williams Kastner & Gibbs, Robert Joseph Sexton, Attorney at Law, Tacoma, WA, Kamela J. James, Law Offices of Kamela J. James, Olympia, WA, for Appellants.
WORSWICK, J.
¶ 1 American Optical Corporation, Mine Safety Appliances Company, and North Safety Products USA (collectively, respirator manufacturers) appeal the superior court's denial of their summary judgment motion, arguing that they had no duty to warn Leo Macias, a retired tool worker, that he could be exposed to harmful asbestos dust while cleaning their respirators at a Seattle shipyard. We hold that the respirator manufacturers owed no duty to Macias, reverse the superior court's denial of their motion, and remand for entry of an order granting summary judgment to the respirator manufacturers.

FACTS
¶ 2 Macias worked as a tool keeper at Todd Shipyards in Seattle from 1978 to 2004. As a tool keeper, Macias supplied shipyard workers with tools and equipment, including respirators manufactured by the respirator manufacturers. These respirators were manufactured to protect against a variety of contaminants. Different filter cartridges could be inserted into the respirators to protect the workers against specific contaminants, including welding fumes, paint fumes, asbestos particles, and dust.
*980 ¶ 3 After their shifts, shipyard workers returned "filmy" and "dusty" respirators to the tool room. II Clerk's Papers (CP) at 230. Macias threw these respirators into a nearby basket, sometimes bouncing them off an adjacent window, creating "little poofs of dust." II CP at 233. When the basket was full, Macias disassembled the respirators, causing "dust, sand, [and] dirt" to "fly out." II CP at 234-37. Macias then scrubbed the respirators with a nylon brush, rinsed them in the sink, and stacked them in a drying oven. During a busy work shift, Macias handled hundreds of dirty respirators.
¶ 4 In May 2008, a physician diagnosed Macias with mesothelioma. The following month, Macias filed a complaint for personal injuries against several defendants, including the respirator manufacturers. He asserted, in part, that the respirator manufacturers were negligent and strictly liable for failing to warn him of the dangers of asbestos exposure.
¶ 5 In January 2009, the respirator manufacturers moved for summary judgment. The respirator manufacturers argued that, under our Supreme Court's recent decisions in Simonetta v. Viad Corp., 165 Wash.2d 341, 197 P.3d 127 (2008), and Braaten v. Saberhagen Holdings, 165 Wash.2d 373, 198 P.3d 493 (2008), they had no duty to warn Macias of the dangers associated with asbestos in another company's product. The trial court denied the motion, stating, without further comment, that Simonetta and Braaten were distinguishable. Our commissioner granted discretionary review after concluding that the trial court had committed "obvious error."[1]See Ruling Granting Discretionary Review.

ANALYSIS
¶ 6 This case turns on the applicability of Simonetta and Braaten to Macias's duty to warn claims. The respirator manufacturers argue that Simonetta and Braaten preclude Macias's duty to warn claims because those cases hold that "the duty to warn is limited to those in the chain of distribution of the hazardous product." Br. of Appellant at 6. Macias acknowledges that Simonetta and Braaten "did announce a general rule that manufacturers have no duty to warn of dangers of a product that the manufacturer did not make[,]" but he argues that "[t]he specific safety purpose of respirators distinguishes them from the equipment at issue" in those cases. Br. of Resp't at 1-2. We agree with the respirator manufacturers. We review a trial court's denial of summary judgment de novo. Tiffany Family Trust Corp. v. City of Kent, 155 Wash.2d 225, 230, 119 P.3d 325 (2005). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "If... the plaintiff `fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion'" because "`a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" Young v. Key Pharmaceuticals., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

I. NEGLIGENCE
¶ 7 The respirator manufacturers argue that, as part of their duty to exercise ordinary care, they had no duty to warn Macias of the dangers of asbestos exposure that could result from cleaning their products. We agree.

A. Standard of Review
¶ 8 Under the law of negligence, "[a] manufacturer's duty of ordinary care includes a duty to warn of hazards involved in the use of a product, which are or should be known to the manufacturer." Simonetta, *981 165 Wash.2d at 348, 197 P.3d 127 (citing RESTATEMENT (SECOND) OF TORTS § 388 (1965)). Whether a manufacturer owes a duty to warn of hazards involved in the use of its product is a question of law that "generally depends on mixed considerations of logic, common sense, justice, policy, and precedent." Simonetta, 165 Wash.2d at 349, 197 P.3d 127. We review questions of law de novo. Lunsford v. Saberhagen Holdings, Inc., 166 Wash.2d 264, 270, 208 P.3d 1092 (2009).
¶ 9 Section 388 of the RESTATEMENT, supra, which governs a manufacturer's duty to warn in the negligence context, states:
One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
See Simonetta, 165 Wash.2d at 348 n. 3, 197 P.3d 127 (citing Fleming v. Stoddard Wendle Motor Co., 70 Wash.2d 465, 467-68, 423 P.2d 926 (1967)). A plaintiff must satisfy each of section 388's three subsections in order to assert a viable negligence claim. Simonetta, 165 Wash.2d at 349 n. 3, 197 P.3d 127.

B. Negligence Analysis in Simonetta and Braaten

¶ 10 In Simonetta, a navy machinist performed maintenance work on an evaporator, a machine that converts seawater to freshwater. Simonetta, 165 Wash.2d at 346, 197 P.3d 127. To service the evaporator, Simonetta had to use a hammer to "pry or hack away" asbestos-containing insulation that enveloped the evaporator. Simonetta, 165 Wash.2d at 346, 197 P.3d 127. The evaporator's manufacturer, Viad,[2] did not manufacture the asbestos-containing insulation or insulate the evaporator; rather, Viad shipped the evaporator to the navy without insulation. Simonetta, 165 Wash.2d at 346, 197 P.3d 127. An unidentified company manufactured the insulation, and the navy or an unidentified company installed the evaporator. Simonetta, 165 Wash.2d at 346, 197 P.3d 127.
¶ 11 Simonetta developed lung cancer and sued Viad for failing to warn him of the hazard of asbestos exposure. Simonetta, 165 Wash.2d at 346, 197 P.3d 127. Our Supreme Court rejected Simonetta's negligence claim, stating that the duty to warn under section 388 "is limited to those in the chain of distribution of the hazardous product." Simonetta, 165 Wash.2d at 354, 197 P.3d 127. Accordingly, the court stated, "[b]ecause Viad did not manufacture, sell, or supply the asbestos insulation, we hold that as a matter of law it had no duty to warn under section 388." Simonetta, 165 Wash.2d at 354, 197 P.3d 127.
¶ 12 The Simonetta court observed that the court of appeals had concluded that the danger of asbestos exposure was inherent in the evaporator's use "because the evaporator was built with the knowledge that insulation was required for proper operation and that workers would need to invade the insulation for maintenance."[3]Simonetta, 165 Wash.2d at 350, 197 P.3d 127. Our Supreme Court, however, rejected the argument that the manufacturer's knowledge about the necessity of asbestos use gave rise to a duty to warn. Simonetta, 165 Wash.2d at 350, 197 P.3d 127. The Simonetta court observed *982 that the Washington cases that had interpreted a manufacturer's duty to warn under section 388 involved claims against the product's manufacturer, supplier, or seller, all of whom are parties in the product's chain of distribution. Simonetta, 165 Wash.2d at 350-52, 197 P.3d 127 (citing numerous cases). Because those cases "generally limit the analysis of the duty to warn of the hazards of a product to those in the chain of distribution of the product," the Simonetta court found "little to no support under our case law for extending the duty to warn to another manufacturer's product." Simonetta, 165 Wash.2d at 353, 197 P.3d 127. The court also concluded that case law from other jurisdictions "similarly limits the duty to warn in negligence cases to those in the chain of distribution of the hazardous product." Simonetta, 165 Wash.2d at 353-54, 197 P.3d 127 (citing numerous cases).
¶ 13 The court also disagreed that the language of section 388 supported Simonetta's argument. Simonetta, 165 Wash.2d at 352-54, 197 P.3d 127. According to the court, section 388 "discusses the supplier's responsibility to warn of the dangers of a product" and "limit[s]" liability to "any person, who for any purpose or in any manner gives possession of a chattel for another's use. . . without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied or for which it is permitted to be used." Simonetta, 165 Wash.2d at 352, 197 P.3d 127 (quoting the definition of "supplier" from RESTATEMENT (SECOND) OF TORTS § 388 cmt. c (1965)). The Simonetta court noted that Washington case law was "consistent with the limitation established under the RESTATEMENT." Simonetta, 165 Wash.2d at 352, 197 P.3d 127.
¶ 14 Braaten, a companion case to Simonetta, involved several pump and valve manufacturers that supplied products to the navy. Braaten, 165 Wash.2d at 381, 198 P.3d 493. The navy subsequently added to the pumps and valves asbestos-containing insulation, which was not manufactured by the pump and valve manufacturers. Braaten, 165 Wash.2d at 381, 198 P.3d 493. Braaten, a pipefitter, removed and replaced packing and insulation on the pumps and valves. Braaten, 165 Wash.2d at 381, 198 P.3d 493. To complete his work, Braaten "ground, scraped, [and] chipped" asbestos gaskets, packing, and insulation from the pumps and valves. Braaten, 165 Wash.2d at 381, 198 P.3d 493. He then installed replacement packing and insulation. Braaten, 165 Wash.2d at 381, 198 P.3d 493. Braaten's labors released respirable asbestos. Braaten, 165 Wash.2d at 381, 198 P.3d 493.
¶ 15 Braaten developed mesothelioma and sued the pump and valve manufacturers. Braaten, 165 Wash.2d at 379, 198 P.3d 493. Our Supreme Court relied on its analysis in Simonetta to reject Braaten's contention that the pump and valve manufacturers had a duty to warn him about the dangers of asbestos exposure in the course of his work:
Because "the duty to warn is limited to those in the chain of distribution of the hazardous product," the defendants here had no duty to warn of the danger of exposure to asbestos in the insulation applied to their products. None of the defendants were in the chain of distribution of the exterior insulation applied to their products, and under our analysis in Simonetta, the plaintiff's negligence claims based upon exposure to the insulation applied to the defendants' products were properly dismissed on summary judgment.
Braaten, 165 Wash.2d at 390-91, 198 P.3d 493 (quoting Simonetta, 165 Wash.2d at 354, 197 P.3d 127).
There is no evidence that the defendants are in the chain of distribution of replacement packing and gaskets. They did not manufacture, sell, or supply the replacement packing and gaskets, within the meaning of section 388.
Braaten, 165 Wash.2d at 397, 198 P.3d 493.

C. Negligence Analysis
¶ 16 Under Simonetta and Braaten, the respirator manufacturers had no duty to warn Macias of the dangers of asbestos exposure here. The connection between the manufacturers' product and the asbestos here is even more remote than the connection in Simonetta and Braaten. Here, the respirators were manufactured to protect against a variety of contaminants, not just asbestos. *983 The respirator manufacturers did not manufacture, sell, or supply the asbestos that harmed Macias.[4] Therefore, because respirator manufacturers were not in the chain of distribution of the harmful product, the ordinary duty of care that they owed to Macias under section 388 did not include a duty to warn Macias of the dangers associated with asbestos, a hazardous product that another company manufactured.
¶ 17 Macias argues that the purpose of a manufacturer's product is relevant to the question of whether the manufacturer owes a duty to warn of the dangers of another manufacturer's hazardous product. In his view, [r]espirators are "different from products such as hammers and wrenches, because respirators belong to a category of products whose specific design and purpose is to prevent exposure to hazardous substances." Br. of Resp't at 2. Accordingly, he argues, the respirator manufacturers here and the product manufacturers in Simonetta and Braaten "stand in very different positions with respect to such considerations of logic, common sense, justice, policy, [or] social ideas of where loss should fall." Br. of Resp't at 23.
¶ 18 As Simonetta and Braaten make clear, however, it is not a product's purpose that determines whether a duty exists but, rather, whether the manufacturer is "in the chain of distribution of the hazardous product." Simonetta, 165 Wash.2d at 354, 197 P.3d 127; Braaten, 165 Wash.2d at 390, 198 P.3d 493. The Simonetta court rejected the argument that the manufacturer's knowledge that its evaporator would be used in conjunction with asbestos-containing insulation created a duty to warn under section 388. Simonetta, 165 Wash.2d at 349-50, 197 P.3d 127. Here, the respirator manufacturers knew that their products would be used to filter hazardous substances, including not only asbestos particles, but also dust and fumes from painting and welding. The respirator manufacturers' ability to foresee that their products would be used in tandem with hazardous substances like asbestos, and that cleaning and maintaining their respirators might expose workers to asbestos, does not give rise to a duty to warn under section 388 where the respirator manufacturers were not involved in manufacturing, supplying, or distributing the asbestos. As the Simonetta court noted, "`Foreseeability does not create a duty but sets limits once a duty is established.'" Simonetta, 165 Wash.2d at 349, 197 P.3d 127 (quoting Simonetta v. Viad Corp., 137 Wash.App. 15, 23, 151 P.3d 1019 (2007)), overruled on other grounds by Simonetta, 165 Wash.2d at 341, 197 P.3d 127.
¶ 19 Macias also emphasizes that Simonetta and Braaten's "general rule that manufacturers have no duty to warn of dangers of a product that the manufacturer did not make" is subject to "numerous potential exceptions." Br. of Resp't at 10 (emphasis omitted). Macias's claim against the respirator manufacturers, however, does not fit into an established exception. Macias does not allege, for example, that the respirator manufacturers incorporated a defective component into their respirators such that they had a duty to warn under the theory known as "assembler's liability." See Braaten, 165 Wash.2d at 388, 198 P.3d 493. Additionally, the Braaten court left open the possibility that "a duty to warn might arise with respect to the danger of exposure to asbestos-containing products specified by the manufacturer to be applied to, in, or connected to their products, or required because of a peculiar, unusual, or unique design." Braaten, 165 Wash.2d at 397, 198 P.3d 493. But Macias has not presented evidence that the respirator manufacturers here specified that asbestos should be "applied to, in, or connected to" their respirators due to the respirators' peculiar or unique design.
¶ 20 The single Washington case and numerous out-of-state cases that Macias cites do not support his claim that case law interpreting section 388 "consistently hold[s] that manufacturers of safety products such as respirators have a duty to warn and may be *984 liable for failing to provide adequate warnings about exposure to hazardous substances against which the safety products are specifically designed to prevent." Br. of Resp't at 32-33. These cases are either not directly on point or involve situations where the manufacturer's own product malfunctioned due to an alleged manufacturing or design defect. See White v. W.G.M. Safety Corp., 707 F.Supp. 544, 545-48, (S.D.Ga.1988) (concluding that an employer's independent duty under federal regulations and industry standards to warn its employee of the dangers of sandblastingwhich caused the employee's silicosis after exposure to silica dustdid not relieve the manufacturers and sellers of sandblasting equipment of their duty to warn the employee of the dangers arising from the use of their respiratory equipment); Fuller v. Fend-All Co., 70 Ill.App.3d 634, 27 Ill.Dec. 1, 388 N.E.2d 964, 965, (1979) (reversing trial court's summary judgment order on behalf of a safety glasses manufacturer where a worker who was injured while wearing the glasses claimed that the glasses were unreasonably dangerous because they lacked a "safety side shield" design feature); Duvon v. Rockwell Int'l., 116 Wash.2d 749, 751-61, 807 P.2d 876 (1991) (affirming trial court's denial of portable exhauster manufacturer's summary judgment motion where exhauster's ventilation/filter system failed, exposing the plaintiff to toxic levels of ammonia gas).
¶ 21 Two other cases that Macias cites revolve around the inadequacy of jury instructions, not a manufacturer's duty to warn. See Petes v. Hayes, 664 F.2d 523, 524 (5th Cir.1981) (reversing jury verdict for respirator manufacturer where trial court's special interrogatories were inconsistent with the jury instructions and therefore likely to mislead the jury); Yates v. Norton Co., 403 Mass. 70, 525 N.E.2d 1317, 1318-21 (1988) (reversing jury verdict for respirator manufacturer due to deficient jury instructions on the manufacturer's implied warranty of merchantability). Finally, Macias cites two unpublished federal district court decisions, which are distinguishable because they involve coal miners' claims against respirator manufacturers that the respirators which the miners wore during their labors did not adequately protect them from harmful coal dust.[5]
¶ 22 Essentially, Macias urges us to adopt a new exception to what he characterizes as Simonetta and Braaten's "general rule." Macias asks us to adopt a rule which no other court has adopted. Specifically, Macias urges us to conclude that under section 388, a product manufacturer has a duty to warn of a hazardous substance's dangers where the product's purpose is to protect users from exposure to the hazardous substance.[6] Macias's proposed exception undermines Simonetta and Braaten's rationale for imposing a duty to warn under section 388 and we reject it.

II. COMMON LAW STRICT LIABILITY
¶ 23 The respirator manufacturers also argue that they did not have a duty to warn Macias about the dangers of asbestos exposure under the theory of common law strict liability.[7] We agree.

A. Standard of Review
¶ 24 Whether a manufacturer owes a duty to warn is a question of law that we review de novo. Lunsford, 166 Wash.2d at 270, 208 P.3d 1092; See Simonetta, 165 Wash.2d at 349, 197 P.3d 127; We apply the RESTATEMENT (SECOND) OF TORTS § 402A (1965) to determine whether a manufacturer is strictly liable for its "unreasonably dangerous" products. *985 Simonetta, 165 Wash.2d at 354, 197 P.3d 127. Section 402A states:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
¶ 25 Thus, under section 402A, "a product, though faultlessly manufactured and designed, may not be reasonably safe when placed in the hands of the ultimate user without first giving an adequate warning concerning the manner in which to safely use the product." Simonetta, 165 Wash.2d at 355, 197 P.3d 127. A necessarily dangerous product with an inadequate warning is "unreasonably dangerous" under section 402A. Simonetta, 165 Wash.2d at 355, 197 P.3d 127.
¶ 26 Common law strict liability for unreasonably dangerous products is limited to the parties in the chain of distribution, including sellers, wholesale or retail dealers or distributors, and manufacturers. Simonetta, 165 Wash.2d at 355, 197 P.3d 127; see also RESTATEMENT (SECOND) OF TORTS § 402A cmt. f. Under the common law, "a manufacturer does not have an obligation to warn of the dangers of another manufacturer's product." Braaten, 165 Wash.2d at 391, 198 P.3d 493. Rather, "[w]e justify imposing liability on the defendant who, by manufacturing, selling, or marketing a product, is in the best position to know of the dangerous aspects of the product and to translate that knowledge into a cost of production against which liability insurance can be obtained." Simonetta, 165 Wash.2d at 355, 197 P.3d 127.

B. Strict Liability Analysis in Simonetta and Braaten

¶ 27 In Simonetta, our Supreme Court concluded that Viad was not strictly liable under section 402A for its failure to warn because (1) Viad did not manufacture or market the asbestos insulation, (2) Viad did not have control over the type of insulation that the navy selected to insulate Viad's product, and (3) Viad's evaporator functioned as intended. 165 Wash.2d at 355-57, 197 P.3d 127. The court observed that the "unreasonably dangerous product in this case was the asbestos insulation" whereas Viad's completed product was "the evaporator as delivered by Viad to the [N]avy, sans asbestos insulation." Simonetta, 165 Wash.2d at 362-63, 197 P.3d 127. The policy justifications underlying strict products liability did not justify imposing liability because Viad had no control over the type of insulation that the navy selected and earned no revenue from the sales of asbestos-containing products. Simonetta, 165 Wash.2d at 363, 197 P.3d 127.
¶ 28 The Braaten court followed Simonetta, holding that Braaten had not presented sufficient evidence that the pump and valve manufacturers had "manufactured, sold, or were otherwise in the chain of distribution of the asbestos-containing insulation applied to their products." Braaten, 165 Wash.2d at 389, 198 P.3d 493. Thus, the manufacturers were "not liable under section 402A for failure to warn of the danger of exposure during maintenance of their products to asbestos-containing insulation that was manufactured and supplied by third parties." Braaten, 165 Wash.2d at 389-90, 198 P.3d 493. The Braaten court observed that "the injury-causing products were the products containing asbestos" and that Braaten had "not established a connection between the injury and the manufacturers' products themselves, as is required." Braaten, 165 Wash.2d at 396, 198 P.3d 493.

C. Strict Liability Analysis
¶ 29 As was the case in Simonetta and Braaten, section 402A does not impose a duty to warn on the respirator manufacturers here. The respirator manufacturers did *986 not manufacture or supply the asbestos that injured Macias and did not control the type of contaminants used at the shipyard. Moreover, there is no indication that the respirators malfunctioned in any way; rather, Macias's claim is based on the fact that workers turned in dusty respirators, which he then cleaned. Under similar facts, the Simonetta court concluded that the product manufacturer had no duty to warn the worker who maintained its products that asbestos exposure was dangerous. Simonetta, 165 Wash.2d at 355-60, 197 P.3d 127.
¶ 30 Macias argues that the respirator manufacturers were "`in the best position to know of the dangerous aspects of the product and to translate that knowledge into a cost of production against which liability insurance can be obtained.'" Br. of Resp't at 3 (quoting Simonetta, 165 Wash.2d at 355, 197 P.3d 127). Macias's quotation of Simonetta is selective; he omits the language that immediately precedes this statement, which justifies imposing liability "on the defendant who, by manufacturing, selling, or marketing a product" is in the best position to know of a product's dangerousness. Simonetta, 165 Wash.2d at 355, 197 P.3d 127 (emphasis added). Here, because the respirator manufacturers played no role in the manufacture, sale, or marketing of asbestos materials, imposing liability is not justified.

III. WASHINGTON PRODUCTS LIABILITY ACT
¶ 31 The respirator manufacturers argue that, to the extent that the Washington Products Liability Act (WPLA) applies to Macias's products liability claim,[8] the WPLA does not require them to warn of the dangers of another manufacturer's product. Macias counters that imposing a duty on the respirator manufacturers to "warn of the risk of exposure to a hazardous product against which their products are specifically designed to protect" is consistent with the WPLA's "risk utility" and "consumer expectations" tests. Br. of Resp't at 39. We conclude that the WPLA did not require the respirator manufacturers to warn Macias of the dangers of another company's product.
¶ 32 Under the WPLA, a manufacturer is subject to liability for a claimant's harm if its product is "not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). A "manufacturer" includes "a product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale to a user or consumer." RCW 7.72.010(2). The "relevant product" under the WPLA is the product or its component that gave rise to the product liability claim. RCW 7.72.010(3).
¶ 33 The definition of "not reasonably safe" for purposes of a suit alleging failure to warn of dangers existing at the time of manufacture[9] incorporates the "risk-utility test":
A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.
RCW 7.72.030(1)(b); see also Ayers v. Johnson & Johnson Baby Prods. Co., 117 Wash.2d 747, 759, 818 P.2d 1337 (1991). The "consumer expectation test" is also relevant to determining whether a product is "not reasonably safe." Ayers, 117 Wash.2d at 759, 818 P.2d 1337. See RCW 7.72.030(3) ("In determining whether a product was not reasonably safe under this section, the trier of fact shall consider whether the product was unsafe to an extent beyond that which *987 would be contemplated by the ordinary consumer.")
¶ 34 As we discussed in the preceding section, our Supreme Court has concluded  under pre-WPLA products liability principlesthat product manufacturers outside of the chain of distribution of an unreasonably dangerous product do not have a duty to warn users of the dangers of another manufacturer's unreasonably dangerous product. Simonetta, 165 Wash.2d at 355, 197 P.3d 127; Braaten, 165 Wash.2d at 391, 198 P.3d 493. The WPLA states that "previous existing applicable law of this state on product liability is modified only to the extent set forth in this chapter." RCW 7.72.020(1). In Macias's brief discussion of the WPLA, he cites no language in the WPLA that would modify Simonetta and Braaten's holdings, rooted in pre-WPLA law, that manufacturers outside of a dangerous product's chain of distribution have a duty to warn. Furthermore, Macias's focus on the "risk utility" and "consumer expectation" tests is misplaced. These tests are relevant for determining whether a product is "not reasonably safe," but they do not establish that a manufacturer outside of a dangerous product's chain of distribution has a duty to warn about the product's hazards. Therefore, Macias's WPLA claim fails.
¶ 35 The concurrence invites the Supreme Court to "paint with a narrower brush" in cases such as this because "the purpose of the product was to capture hazardous substances and protect the user" and because the respirator needed to be cleaned in order to function properly. But our Supreme Court has made clear that the purpose of the product is not what gives rise to the duty to warn. And creating liability for this class of product described in the concurrence would impose a duty upon manufacturers and sellers of all types of filters, not just respirators. Indeed, such a duty to warn could well be impossible to fulfill, as filters concentrate any number of contaminants. Warnings are required to be sufficient "to catch the attention of persons who could be expected to use the product; to apprise them of its dangers and to advise them of the measures to take to avoid those dangers." Little v. PPG Industries, Inc. 92 Wash.2d 118, 122, 594 P.2d 911 (1979). Imposing such a duty to warn would put manufacturers in the impossible position of warning of unknowable dangers posed by unknown contaminants.
¶ 36 The respirator manufacturers had no duty to warn Macias about the dangers of asbestos, a product that the respirator manufacturers did not manufacture, supply, or sell. Because the trial court erred by failing to grant summary judgment to the respirator manufacturers, we remand for entry of an order granting summary judgment.
¶ 37 The trial court's denial of summary judgment is reversed, and the case is remanded for entry of an order granting summary judgment to the respirator manufacturers.
I concur: BROSEY, J.
PENOYAR, C.J. (concurrence).
¶ 38 In my view, the facts here are quite different than those in Simonetta v. Viad Corp., 165 Wash.2d 341, 197 P.3d 127 (2008), and Braaten v. Saberhagen Holdings, 165 Wash.2d 373, 198 P.3d 493 (2008). In those cases, a third party added the hazardous product to the defendant manufacturer's product after the original sale. Here, the respirators' intended purpose was to capture hazardous substances and thus protect the user. For the respirators to function properly, as intended by the user and the manufacturer, the user or a co-worker needed to clean the respirators' surfaces and the filters containing concentrated hazardous products. Under these facts, Macias strongly argues that the respirator manufacturers owed a justiciable duty to the person cleaning the respirators under both common law negligence and strict liability, as well as under chapter 7.72 RCW. However, under the broad language of Simonetta and Braaten, Macias's claims must fail. Whether the Supreme Court may choose in the future to paint with a narrower brush in cases such as this remains to be seen.
NOTES
[1] We may accept discretionary review of a superior court's decision when the superior court "has committed an obvious error which would render further proceedings useless." RAP 2.3(b)(1).
[2] The Simonetta court assumed that Viad was successor in interest to the evaporator's original manufacturer. Simonetta, 165 Wash.2d at 345, 197 P.3d 127. Therefore, we refer to Viad as the evaporator's manufacturer.
[3] Viad's expert testified that "the evaporator required insulation to function properly, that such insulation contained asbestos, that the company knew or should have known of the use, and that the insulation would be disturbed during normal maintenance." Simonetta, 165 Wash.2d at 349, 197 P.3d 127.
[4] As part of our Supreme Court's strict liability discussions in Simonetta and Braaten, the court characterized asbestosand not the products that required asbestosas the harmful products. Simonetta, 165 Wash.2d at 363, 197 P.3d 127 ("the unreasonably dangerous product in this case was the asbestos insulation"); Braaten, 165 Wash.2d at 396, 198 P.3d 493 ("[h]ere, the injury-causing products were the products containing asbestos.").
[5] Mem. & Order of U.S. District Court, Hargis v. Am. Optical Corp., No. 06-CV-862-JPG, 2007 WL 924486 (S.D.Ill. Mar. 27, 2007);

Mem. & Order of U.S. District Court, Simon v. Optical Corp., No. 06-CV-861-JPG, 2007 WL 924496 (S.D.Ill. Mar. 27, 2007).
[6] In oral argument before us, Macias agreed this new rule would apply to a manufacturer of rubber gloves.
[7] In Simonetta, our Supreme Court acknowledged that "[w]e have not . . . consistently maintained a clear distinction between strict liability and negligence theories in the failure to warn context." Simonetta, 165 Wash.2d at 356, 197 P.3d 127. The court noted that "in a negligence action, the focus is on the conduct of the defendant; in a strict liability action, the focus is on the product itself and the reasonable expectations of the user." Simonetta, 165 Wash.2d at 356-57, 197 P.3d 127.
[8] WPLA applies to all products liability claims "arising on or after July 26, 1981." RCW 4.22.920(1); see also Laws of 1981, ch. 27. Macias's tenure as a tool keeper from 1978 to 2004 involved work both before and after the WPLA's enactment.
[9] Macias does not specify whether his theory is that the respirators were not reasonably safe because "adequate warnings or instructions were not provided with the product" or because "adequate warnings or instructions were not provided after the product was manufactured." See RCW 7.72.030(1)(b),(c) (emphasis added).