[No. 80251-3.   En Banc.]
Argued March 11, 2008.   Decided December 11, 2008.

VERNON BRAATEN ET AL., *Respondents*, v. SABERHAGEN HOLDINGS ET AL., *Defendants*, BUFFALO PUMPS, INC., ET AL., *Petitioners*, GENERAL ELECTRIC COMPANY, *Respondent*.

374

376

*Barry N. Mesher, Brian D. Zeringer,* and *Andrew G. Yates* (of *Lane Powell, PC*); *Paul J. Lawrence* (of *K&L Gates, LLP*); *Katherine M. Steele* (of *Stafford Frey Cooper*); *Ronald C. Gardner* (of *Gardner Bond Trabolsi, PLLC*); *Michael B. King* (of *Carney Badley Spellman, PS*); and *James E. Horne* and *Michael E. Ricketts* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, LLP*) (*Brett Schuman* and *Mortimer H. Hartwell* of *Morgan Lewis & Bockius, LLP*, of counsel), for petitioners.

*Christopher S. Marks* (of *Williams Kastner & Gibbs, PLLC*); *Matthew P. Bergman, David S. Frockt,* and *Brian F. Ladenburg* (of *Bergman & Frockt*); and *John W. Phillips* and *John M. Geyman* (of *Phillips Law Group, PLLC*) (*Charles S. Siegel* and *Loren Jacobson* of *Waters & Kraus, LLP*, of counsel), for respondents.

*James O. Neet, Jr.,* and *Donald Evans* on behalf of American Chemistry Council, amicus curiae.

*Lynda Mounts, Kenneth Stoller,* and *James O. Neet, Jr.,* on behalf of American Insurance Association, amicus curiae.

*James O. Neet, Jr.,* on behalf of United States Chamber of Commerce, amicus curiae.

*James O. Neet, Jr., Mark Behrens, Victor E. Schwartz,* and *Paul Kalish* on behalf of Coalition for Litigation Justice, amicus curiae.

*Jeanne F. Loftis, Erich Gleber, Steven Rosenblatt, Amy Fenno,* and *Allen E. Eraut* on behalf of Flowserve Corporation, amicus curiae.

*Mark B. Tuvim* on behalf of Ingersoll-Rand Company and Leslie Controls, amici curiae.

*James O. Neet, Jr., Jan Amundson,* and *Quentin Riegel* on behalf of National Association of Manufacturers, amicus curiae.

*James O. Neet, Jr.,* and *Gregg Dykstra* on behalf of National Association of Mutual Insurance Companies, amicus curiae.

*Robin S. Conrad* and *Amar Sarwal* on behalf of National Chamber Litigation Center, Inc., amicus curiae.

*James O. Neet, Jr., Karen Harned,* and *Elizabeth Gaudio* on behalf of National Federation of Independent Business Legal Foundation, amicus curiae.

*Howard M. Goodfriend* and *David W. Holman* on behalf of O-I, Inc., amicus curiae.

*Diana M. Kirchheim, Deborah J. La Fetra, Timothy Sandefur, Alissa J. Strong,* and *Elizabeth A. Yi* on behalf of Pacific Legal Foundation, amicus curiae.

*Jon P. Ferguson, Ann Spragens,* and *Robert Hurns* on behalf of Property Casualty Insurers Association of America, amicus curiae.

*William J. Rutzick* on behalf of Schroeter Goldmark & Bender, amicus curiae.

*Stewart A. Estes* and *Aaron V. Rocke* on behalf of Washington Defense Trial Lawyers, amicus curiae.

¶1 MADSEN, J. — The defendants are manufacturers of valves and pumps sold to the navy and used aboard ships. After the valves and pumps were installed on the ships, the navy applied asbestos-containing insulation to them. None of the defendants manufactured, sold, or otherwise supplied the asbestos insulation applied to their products. Vernon Braaten, who worked as a pipefitter on navy ships, developed mesothelioma and brought suit against the defendants, alleging that they failed to warn him of the danger of exposure to asbestos during routine maintenance of their equipment. The trial court granted summary judgment in favor of the defendants. The Court of Appeals reversed.

¶2 The first issues raised by this case are whether under common law products liability or negligence principles the defendant-manufacturers had a duty to warn of the danger of exposure during maintenance of their products to asbestos in insulation that the navy would foreseeably apply to their equipment. These questions are answered by our decision in the companion case, *Simonetta v. Viad Corp.*, 165 Wn.2d 341, 197 P.3d 127 (2008), where we held that a manufacturer may not be held liable in common law products liability or negligence for failure to warn of the dangers of asbestos exposure resulting from another manufacturer's insulation applied to its products after sale of the products to the navy.

¶3 Some of the defendant-manufacturers' products originally contained packing and gaskets with asbestos in them, but the defendants did not manufacture these products themselves. Rather, the packing and gaskets were manufactured by other companies and installed in the defendants' products. According to Mr. Braaten's uncontroverted testimony, however, it was not possible to tell at the time he worked on the pumps and valves how many times gaskets and packing had been replaced with packing and gaskets manufactured and sold by other companies. The second issue is thus whether the defendant-manufacturers had a duty to warn of the danger of exposure to asbestos in replacement packing and gaskets that the defendants did not manufacture, sell, or otherwise supply, which replaced asbestos-containing packing and gaskets in their products as originally sold. We hold that the general rule that there is no duty under common law products liability or negligence principles to warn of the dangers of exposure to asbestos in other manufacturers' products applies with regard to replacement packing and gaskets. The defendants did not sell or supply the replacement packing or gaskets or otherwise place them in the stream of commerce and did not specify asbestos-containing packing and gaskets for use with their valves and pumps, and other types of materials could have been used. In addition, the evidence is insuffi-

cient to show that Mr. Braaten was exposed to the original packing and gaskets supplied by these defendants. Accordingly, we reverse the Court of Appeals and reinstate the trial court's orders of summary judgment in favor of the defendants.

## FACTS

¶4 Defendants Buffalo Pumps, Inc., IMO Industries, Inc., Crane Company, and Yarway Corporation manufactured pumps and valves that were sold to the navy and used aboard ships. The navy insulated these products with asbestos-containing thermal insulation. None of the defendants manufactured the asbestos insulation that was applied by the navy, and although some of the defendants' products originally contained packing and gaskets with asbestos, they did not manufacture the packing and gaskets themselves.

¶5 Mr. Braaten worked as a pipefitter aboard navy ships from 1967 until 2002.[1] In 2003, he was diagnosed with mesothelioma, which he alleged resulted from exposure to asbestos when he performed regular maintenance on equipment aboard navy ships, including pumps and valves manufactured by the defendants. Mr. Braaten changed packing on the pumps, which required removing the exterior asbestos-containing insulation, removing the old packing, replacing the packing, and reapplying asbestos insulation to the pumps. Mr. Braaten also worked on valves. He removed asbestos-containing insulation from the exterior of the valves, removed asbestos-containing packing from the valves, repacked the valves, and reapplied insulation. He testified that asbestos gaskets and packing usually had to be ground, scraped, or chipped off, resulting in the release of respirable asbestos.

¶6 He also testified, however, that it was not possible to tell how many times the original packing and gaskets in

---

[1] Evidence showed that he was allegedly exposed to asbestos from 1967 until the early 1980s when measures were taken to avoid workers' exposure to asbestos on the ships.

valves and pumps had been replaced with packing and gaskets manufactured by other companies. In addition, according to Mr. Braaten's testimony, he never installed or worked on the pumps when they were new and was not exposed to asbestos when others installed new pumps.

¶7 In January 2005, Mr. Braaten brought the present suit in King County.[2] The defendant-manufacturers filed motions for summary judgment, arguing that they had no duty to warn of the dangers of products that they did not manufacture. The trial court granted summary judgment in favor of the manufacturers and dismissed Mr. Braaten's strict product liability and negligence claims on the basis that the defendants had no duty to warn of dangers of exposure to asbestos in products manufactured by others to which the plaintiff was exposed during maintenance of the defendants' products.[3]

¶8 Mr. Braaten appealed. The Court of Appeals reversed, reasoning that the manufacturers had a duty to warn of the danger of asbestos in insulation because they knew that their equipment would be insulated with material contain-

---

[2] Mr. Braaten originally brought suit in Texas. After one of the defendants in the action brought in Brazoria County, Texas, was granted summary judgment, Braaten nonsuited his case and brought the present action in King County. Mr. Braaten passed away in October 2007. The personal representative of his estate has been substituted.

[3] The dissent is incorrect about the bases for the grants of summary judgment in favor of the four manufacturers. As to the defendant-manufacturers IMO, Buffalo Pumps, and Yarway, the trial court entered summary judgment orders that stated that the court concluded (1) that there was no evidence that the plaintiff was exposed to any asbestos-containing product that was manufactured, sold, or delivered by the manufacturer and (2) that the manufacturer owed no duty to warn of the dangers of products that it did not manufacture or otherwise place into the stream of commerce. Having found no genuine issue as to any material fact in each case, the court entered summary judgment in favor of each defendant and dismissed plaintiffs' claims in their entirety with prejudice. Clerk's Papers (CP) at 7269 (IMO); CP at 5562-63 (Buffalo Pumps); CP at 7284-85 (Yarway).

As to defendant-manufacturer Crane, the court first granted Crane's motion for partial summary judgment on the issue whether Crane had any duty to warn of dangers of asbestos-containing products that were manufactured, sold, or distributed by others. CP at 5565-67. In a separate order, the court granted summary judgment on the plaintiff's remaining claims because Mr. Braaten had not shown exposure to any asbestos-containing components (including packing and gaskets) that were actually supplied by Crane. CP at 7271-72.

ing asbestos and that maintenance of their equipment would result in exposure to this asbestos. The court said that "when a product's design utilizes a hazardous substance, and there is a danger of that substance being released from the product during normal use, the seller of the product containing the substance" has a duty to warn foreseeable users of the product. *Braaten v. Saberhagen Holdings*, 137 Wn. App. 32, 46, 151 P.3d 1010 (2007). The court said that a jury "could determine that the pumps and valves were unreasonably dangerous when used as intended, without warnings about how to safely avoid asbestos exposure." *Id.* at 47. We granted discretionary review. *Braaten v. Saberhagen Holdings*, 162 Wn.2d 1011 (2008).

## ANALYSIS

■ ¶9 Summary judgment is reviewed de novo. *Osborn v. Mason County*, 157 Wn.2d 18, 22, 134 P.3d 197 (2006). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Evidence is construed in the light most favorable to the nonmoving party. *Osborn*, 157 Wn.2d at 22.

### 1. *Products liability—exterior insulation*

¶10 The manufacturers maintain that they have no duty to warn of the dangers associated with use of another manufacturer's products. They contend that product liability law limits the duty to warn to those within the chain of distribution of the product and to those who manufacture a product that, when used with another product, synergistically creates a hazardous condition.

■■ ¶11 As we explained in *Simonetta*, 165 Wn.2d 341, common law product liability claims like those here[4] are

---

[4] Mr. Braaten's exposure to asbestos substantially occurred before the enactment of Washington's product liability act, chapter 7.72 RCW (WPLA). Accordingly, the Court of Appeals applied common law to resolve his product liability claim. *See* RCW 4.22.920(1) (the tort reform act of 1981, which includes the

governed by the *Restatement (Second) of Torts* § 402A (1965),[5] adopted in *Ulmer v. Ford Motor Co.*, 75 Wn.2d 522, 531-32, 452 P.2d 729 (1969). Section 402A is intended to apply to "those in the chain of distribution," i.e., a "manufacturer, . . . dealer or distributor" of the product. *Seattle-First Nat'l Bank v. Tabert*, 86 Wn.2d 145, 148, 542 P.2d 774 (1975) (emphasis omitted); *see Zamora v. Mobil Oil Corp.*, 104 Wn.2d 199, 206, 704 P.2d 584 (1985) (§ 402A is broadly interpreted beyond manufacturers to apply "to all others in the chain of distribution"); *cf. Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 478-79, 573 P.2d 785 (1978) (Washington has adopted § 402A, under which a manufacturer may "incur liability for failure to adequately warn of dangerous propensities of a product which it places in the stream of commerce"), *superseded on other grounds by statute as stated in Van Hout v. Celotex Corp.*, 121 Wn.2d 697, 853 P.2d 908 (1992).

¶12 Under § 402A, liability may be found in the case of inadequate warnings because "[a] product may be faultlessly manufactured and designed, yet still not be reasonably safe when placed in the hands of the ultimate

---

WPLA, applies to claims "arising on or after July 26, 1981"); *Viereck v. Fibreboard Corp.*, 81 Wn. App. 579, 915 P.2d 581 (1996); *Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 865 P.2d 527 (1993).

[5] Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Restatement (Third) of Torts—Products Liability* § 2 (1998) now addresses categories of product defects, including failure to warn. The parties do not ask the court to adopt this section in lieu of § 402A. Insofar as failure to warn is concerned, § 2 of *Restatement (Third) of Torts—Products Liability*, which embodies a negligence or negligence-type standard, is not consistent with Washington's common law, as reflected in the cases. Rather, our precedent imposes strict liability for failure to warn.

user without first giving an adequate warning concerning the manner in which to safely use the product." *Teagle v. Fischer & Porter Co.*, 89 Wn.2d 149, 155, 570 P.2d 438 (1977); *see also Van Hout*, 121 Wn.2d at 704.[6] We held in *Simonetta* that a manufacturer is not liable for failure to warn of the danger of exposure to asbestos in insulation applied to its products if it did not manufacture the insulation and was not in the chain of distribution of the insulation. It makes no difference whether the manufacturer knew its products would be used in conjunction with asbestos insulation. *Simonetta*, 165 Wn.2d at 361.

¶13 Our decision in *Simonetta* is in accord with the majority rule nationwide: a "manufacturer's duty to warn is restricted to warnings based on the characteristics of the manufacturer's own products"; "[t]he law generally does not require a manufacturer to study and analyze the products of others and warn users of the risks of those products." 3 AMERICAN LAW OF PRODUCTS LIABILITY 3D § 32:9 (John D. Hodson & Richard E. Kay eds., 2004); 63A AM. JUR. 2D *Products Liability* § 1127 (1997).[7] Courts reason, among other things, that in general a manufacturer has no obliga-

---

[6] The Court of Appeals said that foreseeability of the harm is not an element of a strict liability failure to warn claim, citing *Ayers v. Johnson & Johnson Baby Products Co.*, 117 Wn.2d 747, 762-63, 818 P.2d 1337 (1991). *Braaten*, 137 Wn. App. at 41 n.15. *Ayers* was addressing a provision in the WPLA, but the court's conclusion is borne out by Washington cases, nonetheless, because Washington applies a strict liability approach to failure to warn cases, unlike jurisdictions that apply a more negligent-like approach to failure to warn claims. *See generally* RESTATEMENT (THIRD) OF TORTS—PRODUCTS LIABILITY § 2 cmt.

[7] The general rule does not apply to a manufacturer who incorporates a defective component into its finished product. 3 AMERICAN LAW OF PRODUCTS LIABILITY 3D § 32:9, *supra*. "The finished product manufacturer is not relieved of the duty to warn merely because the defective component was manufactured by another." *Id.* The justification for this liability, sometimes referred to as "assembler's liability," is that the assembler derives an economic benefit from the sale of the product incorporating the defective component and has the ability to test and inspect the component when it is within the assembler's possession, and by including the component in its finished product represents to the consumer and ultimate user that the component is safe. *Ford Motor Co. v. Wood*, 119 Md. App. 1, 34, 703 A.2d 1315 (1998), *abrogated on other grounds by John Crane, Inc. v. Scribner*, 369 Md. 369, 800 A.2d 727 (2002). In addition, there are some cases where the combination of two sound products creates a dangerous condition, and both manufacturers

tion to become expert in another manufacturer's product and that the policy underpinnings for strict liability (where this is the rule in the jurisdiction, as in Washington) do not apply when a manufacturer has not placed the product in stream of commerce. *E.g., In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055, 1067-69 (N.D. Cal. 2005) (manufacturer of aircraft delivered without seats has no duty to warn airline or passengers of danger of deep vein thrombosis from allegedly improperly designed seats installed in plane after sale, even though manufacturer knew seats would be installed); *Powell v. Standard Brands Paint Co.*, 166 Cal. App. 3d 357, 364, 212 Cal. Rptr. 395 (1985) ("the manufacturer's duty is restricted to warnings based on the characteristics of the manufacturer's own product" (emphasis omitted)); *Blackwell v. Phelps Dodge Corp.*, 157 Cal. App. 3d 372, 203 Cal. Rptr. 706 (1984) (the defendant sold sulfuric acid, transported to the buyer in a tank car supplied by the buyer, and, as a result of pressure generated within the tank car, the acid spewed out and harmed the plaintiffs when they unloaded the tank car; the supplier of the sulfuric acid held to have no duty to warn of this danger because it was not an unreasonably dangerous condition or feature of the defendant's own product); *Garman v. Magic Chef, Inc.*, 117 Cal. App. 3d 634, 173 Cal. Rptr. 20 (1981) (manufacturer of stove had no duty to warn of danger of gas leaks in motor home before lighting pilot and using stove; plaintiff injured when gas leaking from pipe between propane gas tank and water heater was ignited when stove's pilot light lit; manufacturer is not liable for failure to warn of risk of harm from use of its product in conjunction with another product that because of a defect or unsafe use is itself unsafe); *Fricke v. Owens-Corning Fiberglas Corp.*, 618 So. 2d 473 (La. Ct. App. 1993) (manufacturer is not liable for inadequate warnings regarding a product it neither made nor sold); *Walton v. Harnischfeger*, 796 S.W.2d 225 (Tex. App. 1990) (crane manufacturer had no duty to

have a duty to warn. *Id.; see Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 298, 591 N.E.2d 222, 582 N.Y.S.2d 373 (1992).

warn of dangers of rigging that it did not manufacture, incorporate into its crane, or place into the stream of commerce; no duty to warn of another manufacturer's products, even if those products might be used in conjunction with its own product); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 616 (Tex. 1996) (manufacturer has no duty to warn or instruct about another manufacturer's products, even if it knows those products might be used in conjunction with the manufacturer's products); *see also Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 472 (11th Cir. 1993) (manufacturer of nondefective component tire cannot be held liable for a defective rim that " 'it did not manufacture, sell, or otherwise place in the stream of commerce' " (quoting *Sanders v. Ingram Equip., Inc.*, 531 So. 2d 879, 880 (Ala. 1988))); *Newman v. Gen. Motors Corp.*, 524 So. 2d 207 (La. Ct. App. 1988) (manufacturer cannot be liable in a product liability claim where it did not manufacture or install the component of the product claimed to be defective); *Mitchell v. Sky Climber, Inc.*, 396 Mass. 629, 487 N.E.2d 1374, 1376 (1985) (manufacturer of electrically powered lift motor had no duty to warn of safe and proper rigging to use with scaffolding equipment, where it provided no part of the scaffolding equipment sold or leased to plaintiff's employer other than the lift motors and did not design or assemble the scaffolding; the court said, "[w]e have never held a manufacturer liable . . . for failure to warn of risks created solely in the use or misuse of the product of another manufacturer"); *Rastelli v. Goodyear Tire & Rubber Co.*, 79 N.Y.2d 289, 591 N.E.2d 222, 582 N.Y.S.2d 373 (1992) (tire manufacturer who produced a sound product had no duty to warn of danger associated with a defective rim manufactured by another because the tire manufacturer had no role in placing the rim into the stream of commerce, derived no benefit from its sale, did not contribute to the alleged defect, had no control over it, and did not produce it); *see also In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050 (8th Cir. 1995); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 996 F. Supp. 1110 (N.D. Ala.

1997); *Acoba v. Gen. Tire, Inc.*, 92 Haw. 1, 18, 986 P.2d 288 (1999); *Kremer v. Duriron Co.*, 40 Ohio App. 3d 183, 532 N.E.2d 165 (1987).

¶14 The manufacturers contend that there is no evidence that they manufactured the insulation applied to their products or that they were in the chain of distribution.[8] The plaintiff presented evidence in an attempt to show as to some of the defendants that they supplied or specified asbestos-containing insulation for use with their products. With regard to defendant Buffalo Pumps, the plaintiff maintains that documents said to be copies of Buffalo Pumps' certified plans from the National Archives and Records Administration show that Buffalo Pumps specified the use of external insulation, including asbestos-containing insulation, with their pumps. However, these plans on their face are identified as being from Bath Iron Works, as a box in the lower right hand corner of the first page shows. The only place that Buffalo Pumps is mentioned in the plans is in a small box titled "REFERENCES" that refers to a certain pump. Clerk's Papers (CP) at 776. The plans do not say that Buffalo Pumps required its pumps to be insulated with asbestos insulation, and the plaintiff does not explain why it is believed that the document supports this claim.[9] There is no evidence that Buffalo Pumps manufactured or supplied the external insulation applied to its pumps.

¶15 As to defendant IMO, the plaintiff cites a 1972 interoffice memorandum that refers to questions about using asbestos-containing products in insulation materials

---

[8] The plaintiff has also relied on evidence relating to whether the defendant-manufacturers knew or it was foreseeable that the navy would apply asbestos-containing insulation to their equipment and Mr. Braaten would be exposed to asbestos when maintaining it. In light of our analysis and holdings in *Simonetta*, that evidence is not material to the questions before us in this case.

[9] The plaintiff also relies on the deposition testimony of Rear Admiral MacKinnon for the proposition that asbestos insulation was applied to Buffalo Pumps' pumps. However, Admiral MacKinnon testified that pumps arrived without insulation and the navy specified the use of insulation if it determined that a pump needed external insulation.

used by DeLaval's (IMO's predecessor) turbine division.[10] CP at 7218. The plaintiff also noted that a corporate representative for IMO testified in a deposition in another case that DeLaval sold asbestos insulation material for use with its turbine-driven equipment. Finally, the plaintiff cites an October 1972 memorandum from DeLaval's pump engineering that states, "[a]ttached is a copy of [a telex] of 10-4-72 regarding use of non-asbestos insulation on the reactor feed pumps" and asking for comments, and the attached telex that states, "advise that non asbestos insulation mexx material is required per [Occupational Safety and Health Administration]. What substitute are we planning to use for the pumps?" CP at 7235-37 (capitalization omitted). The plaintiff maintains that these materials suggest that DeLaval was using asbestos-containing insulation and supplying such insulation for use with its pumps.

¶16 However, there is no evidence that the pumps on which Mr. Braaten worked were insulated with material supplied by DeLaval and no evidence that DeLaval recommended or told the navy to use insulation or asbestos-containing insulation.[11]

¶17 The plaintiff has not presented sufficient evidence to withstand summary judgment as to whether the defendants manufactured, sold, or were otherwise in the chain of distribution of the asbestos-containing insulation applied to their products. Under *Simonetta*, as a matter of law the manufacturers here are not liable under § 402A for failure to warn of the danger of exposure during maintenance of

---

[10] "In 1974, for safety reasons, Imo independently substituted fiberglass insulation product for the asbestos-containing insulation product previously utilized on certain De[L]aval equipment units." CP at 7190 (Answer to Interrog. No. 3; Def. IMO Industries Inc. Answers and Objections to Pl.'s Req. for Disclosure, First Set of Interrogs. and Req. for Produc. to Defs., in the District Court of Brazoria County, Texas, date-stamped Oct. 14, 2003).

[11] With respect to Crane Company, the plaintiff points to a Crane Company catalog that included Johns-Mansville asbestos-containing insulation products, but there is no evidence that Mr. Braaten was exposed to Johns-Mansville products sold by Crane or, in fact, to any asbestos-containing components supplied by Crane. There is also no evidence that Crane itself manufactured asbestos materials or recommended use of asbestos-containing material as the preferred means of insulating its valves.

their products to asbestos-containing insulation that was manufactured and supplied by third parties.

## 2. *Negligence—exterior insulation*

¶18 The plaintiff also contends that the defendant-manufacturers had a duty to warn of the danger of exposure to the asbestos, breach of which constitutes actionable negligence. As explained in *Simonetta*, a manufacturer's duty to exercise ordinary care and warn of dangers associated with its product is governed by the *Restatement (Second) of Torts* § 388 (1965), adopted in *Mele v. Turner*, 106 Wn.2d 73, 78, 720 P.2d 787 (1986).[12] We noted in *Mele*, 106 Wn.2d at 78 & n.9, that § 388 reflected existing state law. Under § 388, the manufacturer has the duty to warn of the hazards involved in the use of the product that are or should be known to the manufacturer. But Washington case law does not support extending the duty to warn to another manufacturer's product. *Simonetta*, 165 Wn.2d at 353. Rather, our state cases generally limit § 388 liability to those in the chain of distribution of the product, such as manufacturers, suppliers, or sellers, and this accords with the case law from other jurisdictions. *Id.* at 353-54.

¶19 Because "the duty to warn is limited to those in the chain of distribution of the hazardous product," *id.* at 354, the defendants here had no duty to warn of the danger of exposure to asbestos in the insulation applied to their products. None of the defendants were in the chain of distribution of the exterior insulation applied to their

---

[12] Section 388 provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

products, and under our analysis in *Simonetta*, the plaintiff's negligence claims based upon exposure to the insulation applied to the defendants' products were properly dismissed on summary judgment.

### 3. *Products liability—packing and gaskets*

¶20 Next, unlike *Simonetta*, we must consider whether under common law products liability or negligence principles the manufacturers were required to warn of the danger of exposure to asbestos in packing and gaskets in their products if they originally included in their products asbestos-containing packing or gaskets manufactured by others. The manufacturers do not dispute that they would be liable for failure to warn of the danger of exposure to asbestos in the packing and gaskets originally contained in their products. Rather, they rely on the fact that, as stated above, Mr. Braaten testified that he did not work on new pumps and valves and that by the time he worked on the defendants' products, it was impossible to tell how many times the packing and gaskets had been replaced.

¶21 Turning first to products liability law, the plaintiff contends that the manufacturers had a duty to warn of the danger of exposure to asbestos in the packing and gaskets that Mr. Braaten removed and replaced during routine maintenance of the defendants' pumps and valves. The general rule under the common law is, as explained in *Simonetta*, that a manufacturer does not have an obligation to warn of the dangers of another manufacturer's product. The defendant-manufacturers are not in the chain of distribution of asbestos-containing packing and gaskets that replaced the original packing and gaskets and thus fall within this general rule. Moreover, whether the manufacturers knew replacement parts would or might contain asbestos makes no difference because such knowledge does not matter, as we held in *Simonetta*, 165 Wn.2d at 360-61.

¶22 In addition, the theory underlying strict liability under § 402A is that

> the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those *who market them, and be treated as a cost of production against which liability insurance can be obtained*; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Cmt. c (emphasis added). The harm in this case is a result of exposure to asbestos. These manufacturers, who did not manufacture, sell, or otherwise distribute the replacement packing and gaskets containing asbestos to which Mr. Braaten was exposed, did not market the product causing the harm and could not treat the burden of accidental injury caused by asbestos in the replacement products as a cost of production against which liability insurance could be obtained. Thus, the policies that support imposition of strict liability are inapplicable in this case, also indicating that under Washington's common law of strict product liability, no duty to warn on the part of these manufacturers should be found.

¶23 We also note that a number of courts have concluded that there is no duty to warn of dangers associated with replacement parts, where the manufacturer did not design or manufacture the replacement parts, even if the replacement part is virtually the same as the original part. *See, e.g., Baughman v. Gen. Motors Corp.*, 780 F.2d 1131, 1133 (4th Cir. 1986) (plaintiff injured by the explosive separation of a multipiece truck wheel rim assembly; defendant manufacturer of truck had not manufactured or assembled the wheel rim assembly; the manufacturer had no duty to warn

of possible danger posed by replacement parts that it did not design, manufacture, or place into the stream of commerce; a "[manufacturer] cannot be charged with testing and warning against any of a myriad of replacement parts supplied by any number of manufacturers"); *Ford Motor Co. v. Wood*, 119 Md. App. 1, 703 A.2d 1315 (1998) (where there was no evidence that Ford parts were the replacement clutch and brake products containing asbestos that were installed where plaintiff worked, Ford could not be held liable for failure to warn of dangers of asbestos; Ford neither manufactured the parts nor placed them into the stream of commerce); *cf. Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019 (S.D. Ill. 1989) (asbestos chafing strips were routinely replaced during scheduled aircraft maintenance and record showed that plaintiff did not work on aircraft containing original chafing strips supplied by the manufacturer; because the product was not in same form when supplied by manufacturer as when plaintiff worked on it, under § 402A the manufacturer was not liable for harm resulting from exposure to this asbestos); *Exxon Shipping Co. v. Pac. Res., Inc.*, 789 F. Supp. 1521, 1526-27 (D. Haw. 1991).

¶24 *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488 (6th Cir. 2005), is particularly instructive. In *Lindstrom*, a merchant seaman worked in the engine rooms of numerous ships and developed mesothelioma as a result of exposure to asbestos during maintenance work on pumps and valves, among other things. He sued a number of manufacturers, including manufacturers of pumps and valves, asserting products liability and other claims. One of the manufacturers, Henry Vogt, manufactured valves that when sold contained encapsulated asbestos packing and asbestos-containing gaskets.

¶25 Evidence showed that the shipping company generally supplied replacement gaskets and packing and that the plaintiff almost certainly could not have come into contact with the original packing material and gaskets. *Id.* at 493-95. There was no evidence or claim that Henry Vogt

manufactured replacement packing or gaskets. The Sixth Circuit affirmed summary judgment granted in favor of this defendant. The court held that the manufacturer could not be held responsible for asbestos-containing material that was attached to its products postmanufacture. *Id.* at 495.

¶26 Because we have held in *Simonetta* that there is no duty to warn of the dangers of other manufacturers' asbestos products, we also conclude that there was no duty to warn with respect to replacement packing and gaskets. *See Lindstrom*, 424 F.3d at 495-97. As in *Lindstrom*, these manufacturers should not be held liable for harm caused by asbestos-containing material included in their products postmanufacture. It does not comport with principles of strict liability to impose on manufacturers the responsibility and costs of becoming experts in other manufacturers' products. Here, for example, there is evidence that more than 60 types of packing had been approved for naval use.

¶27 With regard to the original packing and gaskets, all of the manufacturers point out that Mr. Braaten's testimony establishes that he cannot show that asbestos in packing and gaskets originally supplied with their products was asbestos to which he was exposed because he testified that he did not work with new pumps and that there was no way to tell whether and how many times gaskets and packing had been replaced in pumps and valves he worked on.

¶28 Turning first to Buffalo Pumps, the plaintiff relies on testimony of Buffalo Pumps' CR 30(b)(6) designee, Mr. Terrence Kenny, who testified that Buffalo Pumps supplied pumps that contained gaskets and packing with asbestos in them, from the 1940s up through the early 1980s. Mr. Kenny testified that when Buffalo Pumps sold equipment, it included asbestos-containing gaskets and packing if specified in the order for the pumps. He was unaware of any orders that did not specify packing and gaskets.

¶29 The evidence is undisputed, however, that Buffalo Pumps did not manufacture the gaskets and packing included in its pumps, and it was not in the chain of

distribution of replacement packing or gaskets. And, as mentioned, Mr. Braaten's testimony shows he did not work on new pumps and so would not have been exposed to gaskets or packing in new pumps supplied by Buffalo Pumps. He changed gaskets to flanges exterior to pumps, but never removed gaskets internal to a Buffalo Pumps' pump. There is no evidence that Buffalo Pumps furnished flange gaskets with its pumps. There is also no evidence that Buffalo Pumps manufactured, sold, or supplied replacement gaskets.

¶30 As to DeLaval pumps supplied by IMO's predecessor, again, Mr. Braaten did not work with new pumps, did not remove interior gaskets, and was not exposed to internal components of the pumps. And, as with the other pumps, Mr. Braaten testified that it was impossible to know how many times gaskets and packing had been replaced prior to his work on DeLaval pumps. Mr. Braaten worked only on pumps in service for some time.

¶31 With regard to defendant IMO, the plaintiff points to a copy of a list of spare parts sent to the Naval Supply Depot in Mechanicsburg, Pennsylvania, in August 1947, which includes packing rings. There is no reference to asbestos, however, and nothing linking this list to any product on ships on which Mr. Braaten worked.

¶32 With respect to Crane Company, the plaintiff points out that a Crane Company catalog advertised asbestos packing for use with Crane valves as well as other asbestos products, including asbestos insulation. As Crane responds, however, the catalog also lists nonasbestos-containing packing and gasket material.

¶33 Finally, as to defendant Yarway, the plaintiff submitted the deposition of Yarway's expert, Horace Maxwell, who testified that between 1908 and 1982, Yarway manufactured a multitude of products that included asbestos-containing parts in them. Among them were boiler trim valves that had asbestos-containing packing and valves, a kind of valve that Mr. Braaten testified he worked on. However, to repeat, Mr. Braaten testified that packing and gaskets were

routinely and periodically replaced as part of the regular maintenance of valves. As mentioned, Mr. Braaten testified it was impossible to know whether gaskets and packing that he removed from the valves were original or had been replaced before he worked on the valves, as with the other defendant-manufacturers. Yarway did not supply, manufacture, or supply replacement packing and gaskets to which Mr. Braaten was exposed.

¶34 "[U]nder traditional product liability theory, the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product. In order to have a cause of action, the plaintiff must identify the particular manufacturer of the product that caused the injury." *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 245, 744 P.2d 605 (1987). Here, the injury-causing products were the products containing asbestos. The evidence is insufficient to establish that Mr. Braaten was exposed to the asbestos-containing packing or gaskets in the products when they were originally supplied rather than replacement packing and gaskets that were not designed, manufactured, specified, or supplied by the manufacturers. The plaintiff has not established a connection between the injury and the manufacturers' products themselves, as is required.

¶35 We hold that the defendant-manufacturers had no duty under common law products liability principles to warn of exposure to asbestos in the thermal insulation applied to their products by the navy because a manufacturer generally has no duty to warn of hazards associated with another manufacturer's products. There is insufficient evidence to create a material issue of fact with respect to whether the manufacturers had a duty to warn of the hazards of asbestos-containing packing and gaskets in or connected to their pumps and valves, and as a matter of law they had no duty to warn of these hazards.

*4. Negligence—packing and gaskets*

¶36 Next, we turn to the negligence claim based on failure to warn of the dangers of exposure to asbestos in

the packing and gaskets. As in the case of the asbestos-containing insulation, the general rule is that there is no duty to warn of the dangers of another manufacturer's product, the breach of which is actionable in negligence. As explained, we have generally limited liability under § 388 to manufacturers that are in the chain of distribution. There is no evidence that the defendants are in the chain of distribution of replacement packing and gaskets. They did not manufacture, sell, or supply the replacement packing and gaskets, within the meaning of § 388.

¶37 As explained in connection with the products liability claim, there is insufficient evidence to create a material question of fact whether Mr. Braaten was exposed to the original packing and gaskets in the defendants' products. Accordingly, we conclude that the manufacturers had no duty to warn of the danger of exposure to asbestos in packing and gaskets, breach of which would be actionable negligence.

¶38 In light of the facts here, we need not and do not reach the issue of whether a duty to warn might arise with respect to the danger of exposure to asbestos-containing products specified by the manufacturer to be applied to, in, or connected to their products, or required because of a peculiar, unusual, or unique design.

¶39 Finally, it is unnecessary to determine whether collateral estoppel should be applied to bar the plaintiff's action against defendants IMO, Crane, and Buffalo Pumps, as they contend in the alternative.[13]

---

[13] As noted, Mr. Braaten had filed an earlier action in Brazoria County, Texas. One of the defendants there was Goulds Pumps, Inc., which successfully moved for summary judgment on the ground that there was no evidence that it had a legal duty to Braaten. The court granted the motion, ruling that Goulds had no duty "to warn of the dangers associated with asbestos solely because asbestos was installed on or around pumps" it manufactured. CP at 310, 560. Mr. Braaten took a nonsuit against the remaining defendants, including General Electric. After the present action was filed, General Electric moved for summary judgment on collateral estoppel grounds, arguing that the same issue had been litigated and decided against the plaintiff in the Brazoria County action. However, as with the other defendant-manufacturers, the trial court granted summary judgment in favor of General Electric on the basis there was no duty to warn.

## CONCLUSION

¶40 As we held in *Simonetta*, a manufacturer has no duty under common law products liability or negligence principles to warn of the dangers of exposure to asbestos in products it did not manufacture and for which the manufacturer was not in the chain of distribution. These holdings apply here and foreclose the plaintiff's products liability and negligence claims based on failure to warn of the danger of exposure to asbestos (1) in insulation applied to pumps and valves the defendant-manufacturers sold to the navy, where the manufacturers did not manufacture or sell the insulation and were not in the chain of distribution of it, and (2) in replacement packing and gaskets installed in or connected to the pumps and valves after they were installed aboard ships, where the manufacturers did not manufacture or sell the replacement packing and gaskets and were not in the chain of distribution of these products.

¶41 The Court of Appeals is reversed. The trial court correctly granted summary judgment in favor of the defendants. We reinstate the orders of summary judgment.

ALEXANDER, C.J., and C. JOHNSON, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶42 STEPHENS J. (dissenting) — The main issue in this case concerns the manufacturers' duty to warn of risks involved in the use of their products. For the reasons set forth in my dissenting opinion in the companion case of *Simonetta v. Viad Corp.*, 165 Wn.2d 341, 197 P.3d 127 (2008), I respectfully dissent.

¶43 The majority also recognizes here that as to the packing and gaskets involved in the use of the pumps and

On appeal, General Electric argued that as an alternative ground for affirming summary judgment in its favor, the Court of Appeals should hold that collateral estoppel barred Mr. Braaten's suit. The Court of Appeals upheld summary judgment in favor of General Electric on this basis. The plaintiff has not sought review of this holding.

valves, "[t]he manufacturers do not dispute that they would be liable for failure to warn of the danger of exposure to asbestos in the packing and gaskets originally contained in their products." Majority at 391. Nevertheless, the manufacturers argue that they had no duty to Vernon Braaten because he did not present evidence that he himself worked on *new* pumps and valves containing original parts. *Id*. The majority adopts this assertion. *Id*. at 394. But the manufacturers' argument goes to causation, not to duty. The majority errs by rejecting the existence of a legal duty because Braaten allegedly did not show that exposure to the original packing and gaskets caused his injury. Summary judgment was on the issue of duty only.

¶44 Akin to the majority's reasoning in *Simonetta*, the majority here disassociates the manufacturers from the replacement packing and gaskets necessary to the use of their products simply because they did not manufacture the replacement parts. *Id*. As I explained in my dissent to *Simonetta*, this is a false disassociation under both negligence and strict liability. The Court of Appeals properly recognized that the manufacturers' duty "was not to warn of dangers associated with a third party's product, but of dangerous aspects of their own product: namely, that using their products as intended would very likely result in asbestos exposure." *Braaten v. Saberhagen Holdings*, 137 Wn. App. 32, 49, 151 P.3d 1010 (2007).

¶45 Because the majority concludes the defendants owed no duty to warn Braaten, it does not reach the issue of whether collateral estoppel bars the plaintiff's action. Defendants IMO Industries, Inc., Crane Company, and Buffalo Pumps did not seek summary judgment based on collateral estoppel below but urge that it is an alternative basis on which to affirm the superior court's order of dismissal. Suppl. Br. of IMO at 19-20; Suppl. Br. of Crane at 19-20; Suppl. Br. of Buffalo Pumps at 19-20.

¶46 While we have discretion to affirm a trial court decision based on grounds not presented to the trial court, the record must have been sufficiently developed below in

order to fairly consider the ground. RAP 2.5(a); *Plein v. Lackey*, 149 Wn.2d 214, 222, 67 P.3d 1061 (2003). Importantly, we will not resolve a case on an issue not presented below unless it is clear that the parties had a full and fair opportunity to develop facts relevant to the issue. *Bernal v. Am. Honda Motor Co.*, 87 Wn.2d 406, 414, 553 P.2d 107 (1976). This standard is not met here, and the defendants offer only cursory briefing on the issue of collateral estoppel. Accordingly, I would not find this a basis to affirm the lower court, and I dissent.

SANDERS and CHAMBERS, JJ., concur with STEPHENS, J.