[Nos. 64312-6-I; 65019-0-I.   Division One.   July 18, 2011.]

SANDRA YANKEE, *Individually and as Personal Representative, Respondent*, v. APV NORTH AMERICA, INC., *Petitioner*.

RENATA NEEDLES, *Individually and as Personal Representative, Appellant*, v. APV NORTH AMERICA, INC., *Respondent*.

2

*John M. Mattingly, Allen E. Eraut,* and *Claude F. Bosworth* (of *Rizzo Mattingly Bosworth PC*), for petitioner/respondent APV North America Inc.

*Thomas J. Owens,* for appellant Renata Needles and respondent Sandra Yankee.

¶1 SCHINDLER, J. — In *Braaten v. Saberhagen Holdings,* 165 Wn.2d 373, 380, 198 P.3d 493 (2008), the Washington Supreme Court held that a manufacturer has no duty under products liability or negligence principles to warn of the exposure to asbestos-containing replacement parts that it did not manufacture, sell, or supply. Sandra Yankee, individually and as the personal representative of the estate of Dennis Yankee (Yankee); and Renata Needles, individually and as the personal representative of the estate of her father, Witold Siemieniec (Siemieniec), both filed lawsuits against a number of manufacturers, including APV North America Inc., alleging products liability and negligence claims from exposure to asbestos while working at the Alcoa aluminum mill in Washington. There is no dispute that neither Siemieniec nor Yankee were exposed to gaskets, packing, or any other asbestos-containing parts manufactured, sold, or supplied by APV. Because the four documents Siemieniec and Yankee rely on in an attempt to show that APV specified the use of asbestos-containing parts do not constitute specifications, there is insufficient evidence to create a material issue of fact that APV had a duty to warn of asbestos exposure. We affirm summary judgment dismissal of Siemieniec's claims against APV and reverse denial of the summary judgment motion to dismiss Yankee's claims against APV.

## FACTS

¶2 In 1940 and 1941, the predecessor-in-interest to APV North America Inc., Baker Perkins Inc., sold five "[s]ize 22

4

DRM" carbon mixers to the Aluminum Company of America (Alcoa) aluminum mill in Vancouver, Washington. Under the asset purchase and sale agreements, APV is responsible for the carbon mixers Baker Perkins delivered to Alcoa.

¶3 A carbon mixer is a large piece of cast iron and steel equipment that is used to produce carbon to make aluminum. A carbon mixer contains two large paddles that mix the materials in a cast iron trough. The paddles and the trough are heated with steam to extremely high temperatures. The five carbon mixers Baker Perkins shipped to Alcoa contained gaskets and packing manufactured by other companies. After the carbon mixers were delivered, Alcoa workers applied asbestos-containing blanket insulation and mud under a ⅟₁₆ inch metal sheet to cover the exterior of the mixers.

¶4 Every three or four years, the Alcoa workers would dismantle and overhaul, or "teardown," the mixers. The millwrights were responsible for the initial teardown process. As part of the teardown, the millwrights would remove the exterior asbestos-containing insulation on the mixer. They also removed gaskets and packing from various parts of the mixers. The mixer was then moved with a crane to the machine shop where the welders would continue to work on dismantling the mixer. The welders and machinists would rebuild the mixer with a new trough lining and replacement gaskets and packing. After the welders and machinists finished, the millwrights would install new exterior asbestos-containing insulation with a sheet metal cover.

¶5 Witold Siemieniec worked as a welder and mechanic at the Alcoa plant from 1966 until 1986. As a welder, Siemieniec worked on repairing, tearing down, and rebuilding the carbon mixers. Dennis Yankee began working as a laborer at the Alcoa plant in 1969. In 1973 he became a millwright and worked at the Alcoa mill until 1997. As a millwright, Yankee worked on the carbon mixers.

¶6 By the time Siemieniec and Yankee started working at Alcoa, the mixers were 30 years old and had been torn

down and rebuilt numerous times. There is no dispute that during the time Siemieniec and Yankee worked at the mill, Alcoa only used insulation, gaskets, packing, and other replacement parts for the carbon mixers that were manufactured by Garlock Sealing Technologies LLC.[1]

¶7 Siemieniec was diagnosed with mesothelioma in October 2006 and died in March 2007. Yankee was diagnosed with mesothelioma in February 2006 and died in June 2008. The estate of Siemieniec and the estate of Yankee filed lawsuits against a number of manufacturers, including APV and Garlock, alleging product liability and negligence claims from asbestos exposure while working on the carbon mixers at the Alcoa mill.

¶8 APV filed a motion for summary judgment in both cases, arguing that because there was no evidence that either Siemieniec or Yankee were exposed to asbestos-containing products manufactured or sold by APV, as a matter of law, APV was not liable for asbestos exposure from the use of another manufacturer's materials or replacement parts. APV relied on the undisputed deposition testimony that showed that Siemieniec and Yankee only worked on the carbon mixers with materials and replacement parts that were manufactured by Garlock. APV also asserted that the mixers were not insulated when they were shipped to Alcoa and there was no evidence that the original gaskets or packing contained asbestos.

¶9 In response, Siemieniec and Yankee argued that the carbon mixers originally shipped to Alcoa used asbestos-containing parts and that APV specified use of asbestos-containing replacement parts. In support, Siemieniec and Yankee submitted deposition testimony about the original gaskets and packing materials used for the carbon mixers. In an attempt to show that APV specified the use of asbestos-containing replacement products for the carbon mixers, Siemieniec and Yankee submitted four documents.

---

[1] Garlock Sealing Technologies LLC is the successor-in-interest to Garlock Inc.

In addition, Siemieniec argued that APV assumed a duty to warn because it conducted periodic inspections of the mixers.

¶10 The trial court granted APV's motion for summary judgment in Siemieniec's lawsuit and dismissed his claims against APV. The court rejected Siemieniec's argument that the documents required Alcoa to use asbestos-containing materials or replacement parts. The court's oral ruling states, in pertinent part:

> And so that brings us to the second issue: Did Mr. Siemieniec come into contact with any materials specified by APV? There is no Washington authority addressing the question of whether a duty to warn might arise with respect to the danger of exposure to asbestos-containing products specified by the manufacturer.

> As already indicated, the Braaten Court expressly reserved that issue. This Court does not need to resolve the issue because it finds that there is no evidence that Mr. Siemieniec came into contact with replacement parts that were specified by APV.

> Mr. Owens has pointed to three documents which he says shows that APV did specify the use of asbestos parts. Those are documents 112, 228 and 243. Document 112, which appears to be part of the original operating instructions from the early 1940s, says, quote, "Use packing Palmetto," close quotes. The parties disagree on whether this can be characterized as a specification. But even assuming that it is a specification — and by that, the Court means an instruction to the customer to always use Palmetto packing, it's clear that that instruction was not followed.

> When Alcoa replaced the Palmetto packing, it did so with Garlock packing. Likewise, it replaced the original gaskets with Garlock gaskets. So document 228, which lists Durabla gaskets under the "specification" column cannot be a basis for liability.

> The same applies to document 243 from 1955, which lists US Rubber gaskets. Putting aside the issue of whether plaintiff has sufficiently established that US Rubber gaskets contained asbestos, for purposes of this analysis, the Court will assume

that it has. But by the time that Mr. Siemieniec began working at the facility, those gaskets had been replaced by Garlock.

And finally, there is no evidence that APV specified what kind of insulation should be used by its customers. So in conclusion, even if the Washington Courts were to adopt a specification exception to Braaten, Simenetta [sic], plaintiff has simply not produced any evidence that Mr. Siemieniec was exposed to asbestos as a result of such specification.

¶11 In Yankee's lawsuit, a different judge granted APV's summary judgment motion in part but denied dismissal of Yankee's claim against APV that it had a duty to warn based on "specification of asbestos-containing components."[2] The trial court stated:

I think there is enough there for a question of fact and a trier of fact, whether or not the gaskets, or the insulation[,] whether there was a sufficient specification to give rise to a duty to warn, barely. It is barely there.

But I think that resolving the inference in the favor of the non-moving party it survives.

We granted APV's motion for discretionary review of the trial court's decision in Yankee's lawsuit to deny summary judgment dismissal of the failure to warn claim.[3] We consolidated that case with Siemieniec's pending appeal challenging dismissal of his claims against APV on summary judgment.

## ANALYSIS

*Standard of Review*

■■ ¶12 We review a trial court's summary judgment decision de novo. *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 230, 119 P.3d 325 (2005). Summary judg-

[2] But the court granted APV's motion to dismiss Yankee's claims for design defect and a duty to warn based on inspections.

[3] Yankee did not cross appeal the trial court's dismissal of his design defect and duty to warn based on inspection claims against APV.

ment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "If . . . the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' then the trial court should grant the motion." *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Summary judgment is appropriate if in view of all of the evidence, reasonable persons could reach only one conclusion. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992).

¶13 Siemieniec and Yankee concede that they were not exposed to gaskets, packing material, or any other asbestos-containing replacement parts that were manufactured, sold, or installed by APV.[4] There is no dispute that by the time Siemieniec and Yankee began working at Alcoa, the original gaskets and packing had been replaced numerous times during routine maintenance and the teardowns. Yankee conceded that it was not possible that he was exposed to the original gaskets and packing installed or supplied by APV. There is also no dispute that during the time that Siemieniec and Yankee worked at the mill, Alcoa used only gaskets, packing, and replacement parts and materials that were manufactured by Garlock.

¶14 Nonetheless, Siemieniec and Yankee assert that because APV specified the use of asbestos-containing replacement parts, it had a duty to warn of asbestos exposure. Siemieniec and Yankee rely on four documents in support of the claim that APV specified the use of asbestos-containing parts with the carbon mixers.

¶15 APV asserts that under *Braaten* and *Simonetta v. Viad Corp.*, 165 Wn.2d 341, 197 P.3d 127 (2008), an equip-

---

[4] APV disputes whether the original gaskets and packing contained asbestos.

ment manufacturer is not liable for asbestos-containing products that it did not manufacture or sell, even if the manufacturer knew that asbestos-containing products would be used with the equipment. APV also argues that the documents do not show that it specified the use of asbestos-containing products. In addition, APV asserts that even if the documents showed that APV specified the use of asbestos-containing replacement parts or materials, the record establishes that Alcoa did not use the materials or parts identified in the documents.

¶16 In *Simonetta*, the Washington Supreme Court held that an equipment manufacturer does not have a duty to warn of the dangers of asbestos-containing products under *Restatement (Second) of Torts* section 388 (1965) and *Restatement (Second) of Torts* section 402A if the equipment manufacturer was not "in the chain of distribution" and "did not manufacture, sell, or supply the asbestos insulation." *Simonetta*, 165 Wn.2d at 354-55. The court also stated that the manufacturer did not have a duty to warn because it "had no control over the type of insulation the navy would choose and derived no revenue from sales of asbestos-containing products." *Simonetta*, 165 Wn.2d at 363 n.8.

¶17 The court in *Simonetta* expressly rejected the argument that an equipment manufacturer was liable because it knew the equipment would be used in conjunction with asbestos-containing insulation. *Simonetta*, 165 Wn.2d at 361. Under *Simonetta*, a manufacturer is not liable for failure to warn of the danger of exposure to asbestos-containing products that it did not manufacture without regard to whether the manufacturer knew its product would be used in conjunction with other asbestos-containing products. *Simonetta*, 165 Wn.2d at 357.

> We justify imposing liability on the defendant who, by manufacturing, selling, or marketing a product, is in the best position to know of the dangerous aspects of the product and to translate that knowledge into a cost of production against

which liability insurance can be obtained. Here, Viad did not manufacture or market the asbestos insulation. Nor did Viad have control over the type of insulation the navy selected.

*Simonetta*, 165 Wn.2d at 355.

¶18 In *Braaten*, the court addressed the question of whether a manufacturer was liable for asbestos-containing replacement products such as insulation, gaskets, and packing that were used with the original equipment but were manufactured or supplied by another manufacturer. *Braaten*, 165 Wn.2d at 380.

¶19 The court held that because the equipment manufacturer did not manufacture the asbestos-containing insulation, gaskets, and packing originally used with the equipment, and did not manufacture, sell, or supply the replacement parts and "did not . . . otherwise place them in the stream of commerce," the manufacturer had no duty to warn under common law products liability or negligence principles, "even if the replacement part is virtually the same as the original part." *Braaten*, 165 Wn.2d at 380, 392.

> Some of the defendant-manufacturers' products originally contained packing and gaskets with asbestos in them, but the defendants did not manufacture these products themselves. Rather, the packing and gaskets were manufactured by other companies and installed in the defendants' products. According to Mr. Braaten's uncontroverted testimony, however, it was not possible to tell at the time he worked on the pumps and valves how many times gaskets and packing had been replaced with packing and gaskets manufactured and sold by other companies.

*Braaten*, 165 Wn.2d at 380.

¶20 The court also held the manufacturers did not have a duty to warn of the danger of exposure to asbestos-containing replacement parts

> that the defendants did not manufacture, sell, or otherwise supply, which replaced asbestos-containing packing and gaskets in their products as originally sold. We hold that the

general rule that there is no duty under common law products liability or negligence principles to warn of the dangers of exposure to asbestos in other manufacturers' products applies with regard to replacement packing and gaskets. The defendants did not sell or supply the replacement packing or gaskets or otherwise place them in the stream of commerce and did not specify asbestos-containing packing and gaskets for use with their valves and pumps, and other types of materials could have been used.

*Braaten*, 165 Wn.2d at 380. Accordingly, the court states that it did not reach the question of whether a duty to warn "might arise with respect to the danger of exposure to asbestos-containing products specified by the manufacturer to be applied to, in, or connected to their products, or required because of a peculiar, unusual, or unique design." *Braaten*, 165 Wn.2d at 397.

■ ■ ¶21 Here, Siemieniec and Yankee rely on the specification language in *Braaten* to argue that APV had a duty to warn of the dangers of exposure to asbestos. Siemieniec and Yankee assert that APV specified the use of asbestos-containing replacement parts for use with the carbon mixers. APV contends that the court in *Braaten* did not create an exception for the duty to warn of asbestos exposure where the manufacturer specifies use of asbestos-containing replacement parts. Nevertheless, APV asserts that the documents in this case do not establish a specification by APV to use only certain products with the carbon mixers. We agree. The four documents that Siemieniec and Yankee rely on do not show that APV specified use of the asbestos-containing gaskets, packing material, or replacement parts manufactured by Garlock.

¶22 The first one-page document, labeled "Operating Instructions," is dated 1941 and is apparently related to the carbon mixers originally shipped to the Alcoa mill. The document contains a typed heading titled "Use Packing," with a hand-written notation, "Palmetto 1″ x 1″." Assuming Palmetto packing contained asbestos, there is no evidence

that APV manufactured, sold, or provided Palmetto packing or that Alcoa ever used Palmetto packing with the carbon mixers. The uncontroverted evidence also establishes that neither Siemieniec nor Yankee ever worked with either Palmetto or the original packing used on the carbon mixers.

¶23 The second one-page document, titled "Maintenance of Glands with Soft Packing," does not refer to asbestos. The document refers to "[s]quare braided packing, as called for on the parts list," that can be obtained from the hardware store. The document states, in pertinent part:

> Square braided packing, as called for on the parts list, if used at the factory and is obtainable from large hardware stores, millwright supply houses, or direct from Baker Perkins Inc. An inferior grade of packing should not be used for re-packing glands.
>
> . . . .
>
> When a lantern ring, or other means of applying a lubricant (other than that impregnated in the packing) is used, a lubricant that is not detrimental to the material being processed must be used. (Use Dow Corning Silicone Grease #DC-44.)

¶24 The two other one-page documents are "Dispatch List[s]" for repair orders in 1943 and 1955. The 1943 Dispatch List shows APV shipped a "Saddle Section" for one of the mixers along with studs, hex nuts, cover plates, and two "Durabla" gaskets with instructions to "[a]ssemble above parts." The document states that the saddle section part was a "standby pending outcome of repairs made locally on original saddle section." There is no evidence that the saddle section or the gaskets referred to in the Dispatch List were used by Alcoa. The Dispatch List dated 1955 shows that APV sent parts for a mixer, including liners for the trough shell, a valve door, hex nuts, door jacket plates, and "U.S. Rubber Co. #899" gaskets. But again, there is no evidence that Alcoa used the U.S. Rubber Co. gaskets.

¶25 We conclude these four documents do not constitute specifications to use asbestos-containing replacement parts.

The documents do not require Alcoa to use the asbestos-containing parts referred to in either the original operating and maintenance instructions or the two Dispatch Lists.

¶26 There is insufficient evidence to create a material issue of fact that APV had a duty to warn based on a handwritten note to use Palmetto with the original carbon mixers sent in 1941, a maintenance document that does not refer to asbestos, and the two Dispatch Lists. Further, the uncontroverted evidence establishes that even if these documents are treated as specifications, there is no evidence that Alcoa used the products identified in the documents. To the contrary, the record shows that when Siemieniec and Yankee worked at the mill, Alcoa used only replacement parts manufactured by Garlock.

¶27 Siemieniec also argues there are material issues of fact as to whether he was exposed to asbestos-containing Superex insulation encapsulated inside the trough extension covers of the carbon mixers sold to Alcoa. In support of his argument, Siemieniec submitted diagrams for a mixer with the same model number as the Alcoa mixers. The diagrams show a cover fabricated from two layers of one-quarter-inch steel filled with Superex asbestos-containing insulation. Siemieniec asserts that because he was a welder, it is reasonable to infer that he was exposed to Superex when the Superex insulation was replaced during the teardowns. APV contends the diagrams Siemieniec relies on are for mixers shipped to Alcoa in Texas, and the mixers shipped to Alcoa in Washington did not include trough extension covers.

¶28 The evidence does not support Siemieniec's argument that he was exposed to the original encapsulated Superex insulation or that the internal insulation was replaced during the time Siemieniec worked at the Alcoa mill. The testimony shows that the only insulation Siemie-

niec worked with was the exterior insulation installed by Alcoa.[5]

¶29 Siemieniec also argues that based on a lengthy repair and inspection history, APV assumed a duty to warn. The case Siemieniec relies on, *Sheridan v. Aetna Cas. & Sur. Co.*, 3 Wn.2d 423, 100 P.2d 1024 (1940), is distinguishable. In *Sheridan*, the insurance company assumed the duty to perform mandatory safety inspections of an elevator every three months. *Sheridan*, 3 Wn.2d at 440.

¶30 Here, unlike in *Sheridan*, the record does not show that APV assumed a duty to warn based on ongoing inspections. Most of the documents Siemieniec cites are related to inspections done by APV when the carbon mixers were originally delivered in 1941. Some documents show APV shipped a number of replacement parts to Alcoa, including trough liners, gears, and other parts that Alcoa did not fabricate. Several documents refer to inspections of the replacement parts before APV shipped the parts to Alcoa.[6] It appears that only one document shows that an APV engineer actually went to the Alcoa mill in the late 1980s to inspect a failed bearing in one of the carbon mixers.

¶31 We affirm the trial court's decision to grant summary judgment dismissal of Siemieniec's claims against APV. We reverse the trial court's decision to deny APV's

---

[5] The case Siemieniec cites in his statement of additional authorities, *Morgan v. Aurora Pump Co.*, 159 Wn. App. 724, 248 P.3d 1052 (2011), *petition for review filed*, No. 86024-7 (Wash. May 25, 2011), is distinguishable. Unlike here, in *Morgan* the plaintiff presented evidence that he was exposed to asbestos from the original products or replacement parts supplied by the defendants. *Morgan*, 159 Wn. App. at 734.

[6] A few documents show an inspection of the mixers' gears after one or more of the mixers broke down. But the documents are not dated and the plaintiffs offer no evidence establishing APV performed the inspections.

motion for summary judgment dismissal of Yankee's claim that APV had a duty to warn.

GROSSE and COX, JJ., concur.